WEISS et al. v. HAIGHT & FREESE CO.

(Circuit Court, D. Massachusetts. March 22, 1907.)

No. 179.

TRUSTS—TRACING TRUST PROPERTY—SUFFICIENCY OF IDENTIFICATION.

Where defendants receive $5,000 on a trust in favor of O., and mingle it with their own funds in one bank account, and deplete the account only by certified checks in effect in favor of and retained by them, and before the money represented thereby is transferred to another they replenish their deposit, so that, excluding certified checks retained by them, there always remains in the account at least $5,000, the trust may be enforced as a charge on the fund in preference to the claims of defendants' general creditors.

In Equity.
See 148 Fed. 399.

William P. Maloney and Walter S. Bucklin, for American Surety Co.
Wm. D. Turner, for receiver.

LOWELL, Circuit Judge. The cashier of the Oxford National Bank speculated through the Haight & Freese Company, which held itself out as a stockbroker, but was actually engaged in swindling its customers. To carry on his speculation, he drew a cashier's check in favor of the company upon the Boston correspondent of his bank on November 29, 1904, and sent the check to the Haight & Freese Company, which, on November 30th, deposited it to its account in the Shawmut Bank. The Shawmut Bank collected the check in due course. On the day of deposit the Haight & Freese Company drew certified checks to the order of Beardsley, its cashier, for substantially the amount of the deposits made on that day. In order to avoid the attachment of its funds these certified checks were kept for about 10 days in a safe-deposit box. On December 9th the certified checks were deposited in the Shawmut Bank to the account of Lillis, an officer of the Haight & Freese Company, and on the same day the Lillis account was overdrawn.

There were three accounts in the National Shawmut Bank used by the Haight & Freese Company in its transactions, one in the name of Haight & Freese, to the credit of which the cashier's check was deposited (hereinafter called the company's account), another in the name of Lillis, and the third in the name of Poor, the company's manager. These accounts were consolidated into one on April 17, 1905.

Funds received from customers were deposited in the company's account. It was the practice of the officers of the company immediately after deposits were made to this account to draw out practically all the money standing to the credit of this account by certified checks to the order of Beardsley or of Lillis, and to retain these checks in the safe-deposit vault for some time until the amount was necessary for the company's purposes. This course was taken to prevent the assets from being attached. All checks drawn on the company's account were certified.

There was on deposit to the credit of these three accounts added together, at all times from the time of the deposit of the company's

draft to April 17, 1905, a sum exceeding $5,000, if the certified checks be omitted from the reckoning; and the same condition was true of the consolidated account from April 17th to the date of the appointment of the receiver. The outstanding certified checks not used for the company's business always exceeded $5,000. As the certified checks were drawn only against the company's account, it follows that that account always contained, including the sums covered by the certified checks drawn against it but not deposited, more than $5,000. When the receiver took possession, there appeared by the books of the bank to be on deposit to the credit of the consolidated account but a few hundred dollars, but there were certified checks to the order of Lillis and Beardsley to the amount of about $70,000, of which $29,000 were in vaults and about $40,000 with the teller of the bank. Counsel for the receiver admitted that the company had constructive notice of the cashier's fraud, and took the $5,000 upon a trust in favor of the bank. The bank was reimbursed for its cashier's defalcation by a fidelity insurance company, which has thus succeeded to the rights of the bank.

The only question now before the court is this:

Is the Oxford Bank permitted to follow its money into the funds acquired by the receiver so as to be entitled to priority of payment against the general creditors of the company? Where a trustee mingles a beneficiary's money with his own in one bank account, an act ordinarily improper, but not necessarily fraudulent, the beneficiary may follow his property into the mingled deposit, and he has a lien thereupon for repayment. "If the proceeds of trust property can be traced into a particular fund, the trust may be established and enforced as a charge upon the fund." Lowe v. Jones, 78 N. E. 402, 403, 192 Mass. 94. Where the trustee thereafter draws a check generally against the deposit, a court of equity raises a presumption that the trustee has acted honestly so far as he may—that he has drawn out his own money and has spared that which did not belong to him. But if the deposit is so far exhausted that some of the beneficiary's money has been misapplied, a subsequent replenishment of the account by later deposits, without their specific allocation to the trust fund, will not give the beneficiary a lien upon these deposits. How stands the case where the account is made good after the check is drawn, but before it is paid? Whatever may be the answer to this question where the check is delivered to an outsider for value or in payment of a debt, yet where the check is in effect retained by the trustee who drew it, I think that the presumption above mentioned still avails the defrauded beneficiary, and that his lien upon the total deposit remains. And although the check is certified, yet where it is thus retained by the trustee, the result is the same.

In the case at bar the bank could have followed the $5,000 belonging to it into the company's account, and could have established a lien upon that account at any time before it was depleted. The certified checks drawn against it were in effect retained by the company, and before the money which they represented was transferred to the Lillis account the company replenished its original deposit, so that, excluding from the computation the certified checks in the safe-de-

posit vaults, there always remained in that account at least $5,000. Under these circumstances the artificial presumption of the trustee's honesty above stated, however ill-founded in fact, still avails the bank, and it is entitled to payment in full from the company's assets.