## MARSHBURN v. WILLIAMS.

(District Court, E. D. North Carolina. October 12, 1926.)

1. **Banks and banking ⬅=80(7).**

As respects priority, where bank holds funds in vaults under express trust, payments by it will be presumed to have been from other funds.

2. **Banks and banking ⬅=80(7)—Proceeds of bonds converted by bank, by placing them to its credit in another bank, mingling them with other deposits therein, held inextricably intermingled with other assets of converting bank, so that status of owner of bonds was that of general creditor.**

Proceeds of bonds converted by bank, by placing them to its credit in another bank, mingling them with other deposits therein, and checking against them in favor of other banks, *held* inextricably intermingled with other assets of converting bank, so that status of owner of bonds was that of general creditor; there being no presumption that check to another bank embraced part of fund, merely because drawing bank, at time of failure, had balance in such other bank.

In Equity. Suit by J. R. Marshburn against C. L. Williams, receiver of the Commercial National Bank. Decree for defendant.

Wright & Stevens, of Wilmington, N. C., for complainant.

Rodgers & Rodgers and J. O. Carr, all of Wilmington, N. C., for defendant.

PARKER, Circuit Judge. This suit was instituted to recover the proceeds of certain government bonds and coupons, amounting to $3,122.24, deposited with the Commercial National Bank on December 14, 1922, and to have a trust to the amount of said bonds declared in favor of complainant on the assets of the bank which came into the hands of the receiver.

The contention of complainant is that the bonds were deposited with the bank for collection, and not for deposit, and that the proceeds thereof constituted a trust fund in the hands of the bank, which can be recovered from its receiver. Complainant contends also that, even if it should be held that the bank took the bonds as a general deposit, so that no trust relationship was created, complainant is nevertheless entitled to have a constructive trust declared in

its favor, and to recover the proceeds of the bonds from the receiver, on the ground that the bank was hopelessly insolvent, to the knowledge of its officers, when it accepted the deposit. In the view which I take of the case, it is not necessary to pass upon either of these contentions, for the reason that, in my opinion, complainant has utterly failed to trace any part of the proceeds of the bonds into assets which came into the hands of the receiver.

The facts upon which I base the foregoing conclusion are as follows: The bonds were received by the Commercial National Bank on December 14th, and were immediately forwarded to the American National Bank of Richmond, Va., and were by the latter bank credited to the account of the Commercial. The American was charged with them on the books of the Commercial on December 15th. Other debits and credits were entered on that day, with the result that the Commercial had a balance with the American of $1,884.32. The result of the next day's transactions was to increase this balance to $8,178.85. But on December 18th the entire balance of the Commercial with the American was drawn out, and the account was overdrawn to the amount of $15,145.47. Transactions on the 19th and 20th restored the balance; but the account was overdrawn on the 21st, 22d, 23d, 27th, and 28th. There was a balance of $2,242.17 on the 29th, but this was applied by the American on indebtedness owing to it by the Commercial, under the express provision of notes held by the American and which it had held for some time prior to December 14th. When the Commercial failed, it was indebted to the American in a large amount, for which claim was filed with the receiver, who has never received a penny from the American.

Complainant claims a balance of $887.94 in the District National Bank of Washington, because on December 18th the Commercial drew a check on its account in the American for $2,500 in favor of that bank. Complainant likewise claims $500 of a balance of $845.05 in the Coal & Iron National Bank of New York, because on December 18th $500 was transferred by the Commercial to the Coal & Iron National from the American. But an examination of the account with the American, which has been filed with the record, shows that these deposits in the District National of Washington and the Coal & Iron National of New York cannot be said in any sense to be the proceeds of the bonds in controversy. The Commercial had an active running account

with the American, which showed each day debits and credits of large amounts. On December 15th, the day when the bonds were debited against the American, the account was debited with another item of $21,153.50. The balance from the preceding day was $4,608.38. On the 15th the Commercial drew checks against the account for $7,000, $5,000, and $15,000, respectively leaving a balance, as stated above, of only $1,884.32. On the 16th, the account of the American was debited with items of $22,091.28 and $1,150.03, against which there were withdrawals of $16,520.29, $210.67, $114.34, and $101.50, leaving a balance of $8,178.85. On the next business day, the 18th, the account was debited with items of $2.10, $2,254.78, $378.44, $1,558.80, and $11,583.31, against which there were withdrawals of $10,000, $10,000, $15,000, $1,000, and $101.75, in addition to the $2,500 to the District National and the $500 to the Coal & Iron National, leaving an overdraft, as above stated, of $15,145.47.

[1, 2] This being the state of the account of the Commercial with the American between the time of the forwarding of the bonds and the sending of the checks to the District National and the Coal & Iron National, it is perfectly clear to my mind that complainant has not traced into the moneys sent to the District National and the Coal & Iron National the proceeds of the bonds in controversy, or any part thereof, but that, on the contrary, it is shown that the proceeds of the bonds were inextricably intermingled with other assets of the bank. Where a bank has funds in its vaults which it holds under an express trust, payments by it will be presumed to have been made from other funds under the principles discussed in the opinion in Poisson et al., Receivers, v. Williams (D. C.) 15 F.(2d) 582, decided at this term. But where the bank converts the funds to its own use by placing them to its credit in another bank, mingling them with other deposits therein and checking against them in favor of other banks, there can be no presumption that a check given to another bank embraces a part of the fund merely because the drawing bank, at the time of its failure, happens to have a balance in the bank in whose favor it is drawn. I am cited to no authority sustaining such a proposition, and such a presumption would be manifestly unreasonable and would lead to endless confusion.

For the reasons stated in the opinion in the case of First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585, decided

this term, and upon the authority of the cases therein cited, it seems clear to me that complainant has failed to trace the proceeds of the bonds into any fund which came into the hands of the receiver, and is not entitled to have a trust declared in his favor, but is entitled merely to prove a claim as a general creditor.

Decree will be entered accordingly.