## SCHUMACHER v. HARRIETT.
### No. 3182.

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

J. O. Carr, of Wilmington, N. C. (J. F. Duncan, of Beaufort, N. C., on the brief), for appellant.

L. I. Moore, of New Bern, N. C. (Moore & Dunn, of New Bern, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree of the court below which held that the assets of the failed First National Bank of New Bern, N. C., came into the hands of its receiver impressed with a trust in favor of Mrs. Rosa E. Harriett and directed that her claim of $8,500 be paid in full. The receiver has appealed.

The bank failed October 26, 1929. Six weeks prior thereto, on September 13, 1929, Mrs. Harriett, who had just received two checks aggregating $9,193.02 in payment of life insurance on her deceased husband, consulted with the officers of the bank as to a safe form of investment. She decided to invest $8,500 in bonds of the United States and directed the officers of the bank to procure them for her. This they agreed to do, and the checks were turned over to them for that purpose; it being understood that Mrs. Harriett was to be given credit on her account for the amount of the checks above the $8,500 necessary to purchase the bonds. The bonds were never ordered, and the checks, without Mrs. Harriett's knowledge, were credited to a savings account in her name. At the close of business on September 13th, the bank had cash and cash items in excess of $45,000. When it closed its doors on October 26th, it had in excess of $27,000. At no time between these dates did its cash and cash items fall below $24,000.

One of the checks delivered by Mrs. Harriett to the bank was drawn by the Jefferson Standard Life Insurance Company for the sum of $4,758.50; the other by the Metropolitan Life Insurance Company for $4,434.52. The bank received both checks as cash items and gave Mrs. Harriett immediate credit for same. One it forwarded for credit on its account to the State Planters' Bank & Trust Company of Richmond, Va., and the other for like credit to the National City Bank of New York. The balance to its credit in each of these banks on the day of the receipt of the checks and for several days thereafter was an amount considerably in excess of the check deposited. Gradually, however, these balances were reduced until, at the time of the failure, the account with the National City Bank showed an overdraft and that with the State Planters' Bank & Trust Company a balance of only $3,866.08, which was applied on a $20,000 note.

The learned judge below found as a fact that the assets of the bank were increased and augmented by plaintiff's money to the full extent of the $8,500 delivered to it for the purchase of bonds; that at all times thereafter it had on hand more than this amount of cash; and that plaintiff's $8,500 was commingled with other assets of the bank and passed into the hands of the receiver along with the other assets. He thereupon declared the $8,500 claim of plaintiff a prior lien upon the cash which came into the hands of the receiver and directed that same be paid in full therefrom. The receiver admits that the $8,500 was paid to the bank as a trust fund for the purchase of bonds for plaintiff, but denies that it has been traced into his hands. He contends, to the contrary, that he has shown that same was used, not to augment the assets of the bank, but merely to decrease its liabilities.

The rule is well settled that where property or funds which are the subject of a trust are used by a bank in such way as merely to decrease its liabilities and not to augment its assets, no charge upon the assets arises in favor of the cestui que trust. Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993; First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585; City Bank v. Blackmore (C. C. A. 6th) 75 F. 771. On the other hand, it is equally well settled that, where a bank acting as trustee mingles a trust fund with its other funds, the common fund resulting is impressed with a trust to the amount of the trust fund which has been so commingled and lost its identity; and in such case the cestui que trust is entitled to have the trust declared and the trust fund separated from the other funds, even though the bank subsequently to the commingling may have added to and made payments from the common fund, as the presumption is that it respected the trust and did not make payment from the trust property. A limitation upon the rule is that the amount for which the trust is declared may not exceed the smallest amount which the common fund contained subsequent to the commingling of the trust funds. Knatchbull v. Hallett, 13 Ch. D. 696; Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Poisson v. Williams (D. C.) 15 F.(2d) 582; Brennan v. Tillinghast (C. C. A. 6th) 201 F. 609, 612; Empire State Surety Co. v. Carroll (C. C. A. 8th) 194 F. 593, 605.

The rule is thus stated by Judge Sanford in Brennan v. Tillinghast, supra: "It is undisputed that the proceeds of the sale of Brennan's stock, wrongfully converted by the Ironwood Bank to its own use, consti-

tuted a trust fund, which did not lose this character when mingled with other moneys of the bank, and that Brennan was entitled to recover the amount thereof as a preferred claim, if, and to the extent that, he sustained the burden of proof of tracing this money, either in its original shape or in a substituted form, into the moneys which came into the hands of the receiver as part of the assets of the bank. Peters v. Bain, 133 U. S. 670, 693, 10 S. Ct. 354, 33 L. Ed. 696; Board of Commissioners v. Strawn (C. C. A. 6) 157 F. 49, 54, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; In re Brown (C. C. A. 2) 193 F. 24, 29, 113 C. C. A. 348, affirmed sub nom. First National Bank of Princeton v. Littlefield, 226 U. S. 110, 33 S. Ct. 78, 57 L. Ed. 145; Empire State Surety Co. v. Carroll County (C. C. A. 8) 194 F. 593, 604, 114 C. C. A. 435, and cases cited. And proof that the tort-feasor has mingled the trust funds with his own and made payments thereafter out of the common fund, is, nothing else appearing, a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, as trust property, under the legal presumption that he regarded the law and neither paid out the trust fund nor invested it in other property, but kept it sacred."

And in Empire State Surety Co. v. Carroll County, supra, Judge Sanborn thus states the rule: "Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming to the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling (Board of Com'rs v. Strawn, 157 F. 49, 51, 84 C. C. A. 553, 555, 15 L. R. A. [N. S.] 1100; Weiss v. Haight & Freese Co. [C. C.] 152 F. 479; American Can Co. v. Williams, 178 F. 420, 423, 101 C. C. A. 634, 637), as trust property, because the legal presumption is that he regarded the law and neither paid out nor invested in other property the trust fund, but kept it sacred (Board of Com'rs v. Patterson [C. C.] 149 F. 229, 232; Spokane County v. First National Bank, 68 F. 979, 16 C. C. A. 81)."

■ As the fund upon which the trust is asserted in this case is the fund of cash and cash items which passed into the hands of the receiver, the question in the case is whether the $8,500 of plaintiff has been traced into that fund; for it is settled that it is not sufficient merely to prove that the trust property went into the general estate and increased the amount and value thereof which came into the hands of the receiver. Empire State Surety Co. v. Carroll County, supra (C. C. A.) 194 F. 593 at page 604, and cases there cited. We think that this question must be answered in the affirmative. The life insurance checks were received by the bank as cash and were treated by it as such. They increased the cash and cash items in the tills of the bank at the time. When it placed them to its credit in the Richmond and New York banks, it was dealing with them as its own; and the presumption is that cash which was left in its tills was intended to be subject to the trust. While it had, of course, the right to collect the checks, it had no right to place their proceeds to its credit in other banks without holding an equivalent amount in cash in its own vaults to satisfy the trust which it had assumed towards plaintiff; and we must assume that it respected the trust, as "equity imputes an intention to fulfill an obligation."

■ The doctrine of tracing trust funds has been greatly liberalized in recent years. The old rule was that the right ceased when the property was turned into money and mixed and confounded in a general mass of property of the same description. The modern rule of equity, however, is that, "where the fraudulent depositary so mingles goods which he has obtained by fraud with the mass of like goods of his own, the whole may be seized, or considered as held in trust, until equitable separation of the property of the defrauded party is made. So, advancing one step further, where money thus obtained has gone to swell the aggregate in the possession of the fraudulent party, it may, under proper proceedings, be segregated in amount from such aggregate sum, and made the subject of a trust, in order to accomplish the ends of justice." Gray, J., in Quin v. Earle (C. C.) 95 F. 728, 731. See, also, Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Knatchbull v. Hallett, 13 Ch. Div. 696, and notes in 32 Am. St. Rep. at page 129 and L. R. A. 1916C, at page 31.

■■ Under modern banking conditions, the rule as stated should be held to apply to cash items received by a bank under a trust agreement as well as to cash so received. Such an item for all practical purposes differs not at all from currency. It increases the cash funds of the bank just as much as

does a deposit of currency. If the bank cashes it and covers the proceeds into its vaults, the augmentation, of course, is apparent. If, however, the bank treats the cash item as its own and uses it for other banking purposes, such as payment of debts or creating credits in other banks, the cash in the vaults of the bank is relieved to that extent; and, where a trust with respect to a cash item is involved, it must be presumed that the intention was that cash remaining in the vaults of the bank is to be substituted under the trust. There is no more reason, in such case, for refusing to declare a trust on the funds remaining than there would be to refuse to do so because the bank had paid out the identical currency which the cestui que trust had placed in its possession. In other words, we think that a cash item, which is accepted by a bank as cash and fulfills for it the functions of cash, must be treated as cash in determining whether the cash remaining in the bank is subject to a trust because of the commingling of trust funds.

The fact that the bank might have charged back the checks against the account of complainant if they had been dishonored, or that until collection complainant might have treated the bank as an agent for collection (St. Louis, etc., R. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683), does not militate against this conclusion. The fact of importance is that the bank treated the checks as its own and did not have occasion to charge them back. Even if considered an agent for collection, it appropriated the checks to its own use; and the benefit to its cash assets accrued at the time when it received them. It took them as cash and gave complainant immediate credit for them on her account and asserted ownership of them thereafter. See City of Douglas v. Federal Reserve Bank, 271 U. S. 489, 492, 46 S. Ct. 554, 70 L. Ed. 1051. While complainant might have asserted ownership thereafter and claimed the checks or their proceeds, the bank by its action is clearly estopped from denying that it acquired title to them at the time of their transfer, and that they became a part of its cash assets at that time.

And, even if we follow the checks into the accounts of the New York and Richmond banks, we do not think that the position of the receiver is helped. As so deposited, they unquestionably augmented the available assets of the bank, for it appears that on the day the checks were received and for a number of days thereafter, the amount to the credit of the failed bank in these accounts was largely in excess of the checks deposited. The checks, therefore, even if traced into these accounts, were used to increase the assets of the bank and not merely to extinguish its liabilities. These credits in correspondent banks, together with the cash and cash items in the vaults of the banks, constituted its immediately available assets; and a use of one of them for the purposes of business relieved to that extent the use of the others. All were equally under the control of the bank; and if one was exhausted, there is every reason for holding that the others were subjected to the trust, on the principle of the commingling of trust funds, that there is for holding that the remaining currency is subject to the trust, although the identical currency which the cestui que trust deposited may have been paid out. In the complexities of modern banking, cash, cash items, and credit balances react upon each other so rapidly that in ordinary cases it is vain to attempt to distinguish between them. If a cash item has augmented any of them, it must be regarded as having augmented the cash assets of the bank; and, on the principle that the bank is presumed to have respected the trust funds and held them sacred, any cash assets passing into the hands of the receiver must upon the principles and subject to the limitations above stated, be held subject to the trust. There is as little reason for distinguishing between cash, cash items, and deposits in other banks in the application of the equitable doctrine, as there would be in distinguishing between moneys kept in different vaults of the same bank. The fact that the accounts in the Richmond and New York banks were subsequently exhausted has, therefore, no bearing upon the question involved.

We have examined with care the cases relied upon by the receiver, particularly the cases of First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585, and Marshburn v. Williams (D. C.) 15 F.(2d) 589; but we do not think that they are in point. In both of the cases cited the court was of opinion that, under the peculiar facts there existing, there was no augmentation of the assets which passed into the hands of the receiver. Here, for the reasons stated, we think that there was a clear augmentation of assets and that the principles upon which the case of Poisson v. Williams was decided are applicable. The duty of courts is to ap-

ply the principles of law and equity to the conditions of our changing life; and we have no doubt that in view of modern banking practices, the modern but well-settled doctrine of tracing trust funds is applicable to the situation here disclosed.

The decree below will accordingly be affirmed.

Affirmed.