## In re PYNCHON et al.

### WALKER et al. v. IRVING TRUST CO.
### No. 198.

Circuit Court of Appeals, Second Circuit.
Feb. 27, 1933.

Katz & Sommerich, of New York City (Otto C. Sommerich and Raymond T. Heilpern, both of New York City, of counsel), for petitioners.

White & Case, of New York City (Milton A. Krámer, of New York City, of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

PER CURIAM.

The alleged bankrupts were stockbrokers with a principal office in New York City and a branch office in London, England. An involuntary petition in bankruptcy was filed against them on April 24, 1931, and the Ir-ving Trust Company was appointed receiver. Bankruptcy did not follow in England, but the receiver in New York appointed an agent, on May 1, 1931, as a representative in the United Kingdom. This appointment did not carry the powers of a receiver in bankruptcy; however, it was sufficient for collection purposes in England for, on May 7, 1931, a representative acting for the receiver received and turned over to the receiver the moneys on deposit in the alleged bankrupts' English bank amounting to £362.12.2.

On April 21, 1931, the appellant gave its check to the London office of the alleged bank-rupts for £136.1.8 and on April 23d, £272.4.3, for the purpose of purchasing three bonds of an American corporation. These checks were deposited by the alleged bankrupts on the dates of their receipt in a branch of the Westminster Bank of London, England. There was on deposit in that branch at all times, an excess over the funds appellants placed in the alleged bankrupts' hands until on May 6, 1931, the account was debited in the sum of £12,202.7.1 by reason of "Unpaid Stock Cheques New York," and at the close of that day it showed an overdraft of £7,871.17.1. The alleged bankrupts were indebted to this bank in the sum of £23,500 on account of a brokerage loan for which the bank held securities as collateral. It sold the securities and used the proceeds in partial satisfaction of the loan and in payment of the balance it set off credit balances which arose after May 11, 1931. The total of the credits received from other branches of the bank did not amount to the overdraft of £7,871.17.1.

While the payments made by the appellants were for a specific purchase and the funds so received constituted a trust fund, still in order to succeed in its claim for reclamation of these funds, it is essential that the appellant be able to trace the moneys into the hands of the receivers. In re Bolognesi & Co., 254 F. 770 (C. C. A. 2); In re Julius Shapiro, 298 F. 1021 (C. C. A. 2); In re Byrne, 32 F.(2d) 189 (C. C. A. 2). In this the appellants have failed. Reliance is placed upon Schumacher v. Harriett, 52 F.(2d) 817 (C. C. A. 4), but in that case the court found the checks given to the bank were treated by the bank as cash items although they sent the checks for collection to the banks in other cities, and it was held that in so doing, the bank treated the checks as its own and therefore intended to substitute for the trust money the cash it possessed and it was shown that its cash from that date until it came into the hands of the receiver was in excess of the

amount reclaimed. The situation in the instant case is not similar.

The appellant has not avoided the result of wiping out the credit balance by tracing the trust to some other fund before the credit balance was destroyed. It may not be said, in the absence of proof, that the bankrupt set aside cash in New York as a substitute for the checks deposited in England, as in Schumacher v. Harriett, supra. The trust funds have not been traced into the securities attached to the drafts returned on May 6th but afterward collected.

Order affirmed.