### HARMER v. RENDLEMAN.
### No. 3414.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

Garland A. Thomasson and J. E. Swain, both of Asheville, N. C., for appellant.

Harkins, Van Winkle & Walton, of Asheville, N. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

Appellant, who was plaintiff in the court below, instituted this action against the receiver of the American National Bank of Asheville, N. C., to recover certain bonds and notes deposited with that bank, or, in lieu thereof, damages on account of their loss or conversion. By consent of parties the trial judge submitted the following issue to the jury: "Were the securities described in the complaint stolen or lost through the gross negligence of the American National Bank?" And the jury, at the direction of the court, answered this issue "Yes." Judgment was then entered that plaintiff recover the securities in question from the receiver and that, upon failure of the receiver to deliver them to her, she have receiver's certificates in the amount of the bonds not delivered so as to constitute her a general creditor of the bank without preference over other creditors. Plaintiff moved for a judgment which would declare the amount due her a preferred claim against funds in the hands of the receiver; and upon the denial of her motion excepted to the judgment as entered and appealed to this court.

It is perfectly clear that plaintiff has been awarded the only judgment to which she is entitled in the legal action which she has instituted. A court of law can render judgment that the possession of property wrongfully withheld be restored to the rightful owner or can award damages for negligent loss or wrongful conversion; but it has no power to declare a trust or to impress a fund with a lien on the theory that trust funds have entered into it. The latter is a power which only courts of equity can exercise. If we thought, however, that upon the pleadings and proof plaintiff was entitled to

such equitable relief, it would not be denied because she had mistakenly sought relief on the law side of the court. Great American Insurance Co. v. Johnson (C. C. A. 4th) 25 F.(2d) 847; Id. (C. C. A.) 27 F.(2d) 71; Clarksburg Trust Co. v. Commercial Casualty Ins. Co. (C. C. A. 4th) 40 F.(2d) 626. But to justify this court in granting equitable relief in a suit mistakenly instituted at law, it must appear that plaintiff's right to same is supported both by the pleadings and the proofs in the court below. Here it is supported by neither.

Plaintiff's original complaint alleges merely that she placed certain securities with the bank for safe keeping and for the purpose of having the bank collect the interest and dividends from same and deposit them to her credit; that, after the failure of the bank, she demanded a return of the securities, which she was unable to obtain; and that the securities were worth face value. An amendment to the complaint alleges that the bank was guilty of gross negligence resulting in the loss of the securities. The proofs show that the bonds were left by plaintiff with the bank for safe keeping and in order that the interest and dividends might be collected and deposited to her account; that the interest and dividends were so collected and deposited until the bank's failure; that, with two exceptions not here material, plaintiff was not credited with the principal amount of any of the securities; and that in some manner, not shown by the evidence, the securities were taken from the safety deposit box in which they were kept and were not there when the receiver took charge of the bank. There is nothing to show what became of the securities—whether they were sold by the bank and their proceeds covered into its general funds, whether they were used as security for loans obtained by it, whether they were used to extinguish its obligations, or whether they were used by its officers for their private purposes; and there is neither allegation nor proof that the securities or their proceeds augmented in any way the funds which passed into the hands of the receiver when he took over the bank's affairs.

The old rule with regard to the tracing of trust funds wrongfully misapplied, or the proceeds of property wrongfully converted, was that the right ceased when the property was turned into money and mixed and confounded in the general mass of property of the same description. 2 Story Eq. Jurisprudence 1258, 1259; Philadelphia Nat. Bank v. Dowd (C. C.) 38 F. 172, 2 L. R. A. 480. The modern rule, however, is that where such property or its proceeds has gone to swell the aggregate in the possession of the fraudulent party, it may, under proper proceedings, be segregated in amount from such aggregate sum, and made the subject of a trust, in order to accomplish the ends of justice. Quin v. Earle (C. C.) 95 F. 728, 731; Central Nat. Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Knatchbull v. Hallett, 13 Ch. Div. 696; notes 32 Am. St. Rep. 129; L. R. A. 1916C, 31.

But there is a limitation upon this modern rule as well settled as the rule itself, viz., that it is not sufficient to prove merely that the trust property has gone into the general estate and has presumably increased its amount and value. It is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. When it is sought to impress funds in the hands of a receiver with a trust on account of the wrongful conversion of trust property by an individual or corporation to whose rights he has succeeded, it must be shown that the funds in his hands have been directly augmented by the presence of the trust property or its proceeds, so that a court of equity can see with certainty that the trust property is in his hands. Peters v. Bain, 133 U. S. 670, 693, 694, 10 S. Ct. 354, 33 L. Ed. 696; First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585; Marshburn v. Williams (D. C.) 15 F.(2d) 589; Smith Reduction Corporation v. Williams (D. C.) 15 F.(2d) 874; Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 818, 819, 82 A. L. R. 1; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F. (2d) 993; Frelinghuysen v. Nugent (C. C.) 36 F. 229, 239; City Bank of Hopkinsville v. Blackmore (C. C. A. 6th) 75 F. 771; Richardson v. New Orleans Debenture Redemption Co. (C. C. A. 5th) 102 F. 780, 52 L. R. A. 67; American Can Co. v. Williams (C. C. A. 2d) 178 F. 420; Empire State Surety Co. v. Carroll County (C. C. A. 8th) 194 F. 593, 604; Farmers' Nat. Bank v. Pribble (C. C. A. 8th) 15 F.(2d) 175, 176; Dudley v. Richards (C. C. A. 8th) 18 F.(2d) 876. And see exhaustive note in 82 A. L. R. 46, 52, 71, 73, and cases there cited.

The rule with the limitation upon it is thus stated by Mr. Justice Bradley in Frelinghuysen v. Nugent, supra, and this statement is quoted with approval by the Supreme Court in Peters v. Bain, supra: "Formerly the equitable right of following misapplied

money or other property into the hands of the parties receiving it, depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried. The difficulty of sustaining the claim in the present case is that it does not appear that the goods claimed,—that is to say, the stock on hand, finished and unfinished,—were either in whole or in part the proceeds of any money unlawfully abstracted from the bank."

And the late Judge Sanborn thus states the limitation on the rule in Empire State Surety Co. v. Carroll County, supra, the statement being quoted with approval in the subsequent case of Farmers' Nat. Bank v. Pribble, supra: "It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver."

Judge Sanborn follows this with the statement: "Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming to the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, * * * as trust property, because the legal presumption is that he regarded the law and neither paid out nor invested in other property the trust fund, but kept it sacred." And this rule was applied by us in Schumacher v. Harriett, supra; but there is nothing in the record to

justify its application here, for there is no proof that the securities of plaintiff or their proceeds were ever mingled with any fund that came into the hands of the receivers.

It is true, of course, that where it is shown that securities have been delivered to a bank to be held for a special purpose and that the bank or its receiver has failed to return them upon demand, a prima facie case of liability on the part of the bank is made out in a suit instituted to secure the return of the securities or damages for their conversion. Beck v. Wilkins-Ricks Co., 179 N. C. 231, 102 S. E. 313, 9 A. L. R. 554, and cases there cited. But in order to impress funds in the hands of the receiver with a trust in favor of the owner of the securities, it is necessary to do more than establish liability for conversion. The owner must trace the securities or their proceeds into the funds which have come into the hands of the receiver, or show that such funds were directly augmented as a result of the conversion of the securities. This the plaintiff in this case has not done.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.