**EDISTO NAT. BANK OF ORANGEBURG, S. C., et al. v. BRYANT.**

No. 3671.

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1934.

918

Donald Russell and C. C. Wyche, both of Spartanburg, S. C. (W. C. Wolfe, of Orangeburg, S. C., S. J. Nicholls, of Spartanburg, S. C., and John F. Anderson, of Washington, D. C., on the brief), for appellants.

T. B. Bryant, Jr., of Orangeburg, S. C., and Douglas McKay, · of Columbia, S. C. (McKay & Manning, of Columbia, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree declaring assets in the hands of the receiver of the insolvent Edisto National Bank of Orangeburg, S. C., subject to a trust in favor of the executor of one U. G. Bryant, and directing the receiver, out of the assets of the failed bank in his hands, to pay the executor the sum of $19,000. A motion to strike the answer was allowed, and the decree was entered upon the admitted facts as set forth in the bill of complaint. These facts may be briefly stated as follows:

U. G. Bryant died in 1926 leaving a will which designated his widow and son as coexecutors thereof, with provision that, in the event of the death of either pending the settlement of the estate, the Edisto National Bank should take the place as coexecutor of the one so dying. The widow died on Jan-

uary 30, 1933, and the bank qualified as coexecutor in the following February. At that time the executors had on deposit with the bank approximately $20,000, of which $1,000 was on checking account and $19,000 was a savings deposit and drew interest. On the qualification of the bank as coexecutor under the will, W. Raymond Bryant, the other coexecutor, demanded that it transfer the deposit accounts to the trust department of the bank; and he was later advised that this had been done. After the closing of the bank, however, it was discovered that no transfer had been made with respect to the $19,000 savings deposit; and the answer attempted to justify the failure to transfer this account to the trust department on the ground that the withdrawal of such an amount from the savings department without a notice of 90 days was forbidden by a resolution of the directors of the bank.

The court below was of opinion that upon the qualification of the bank as executor the duty devolved upon it, under 12 USCA § 248 (k), to segregate and invest the funds held by it in a fiduciary capacity; that, considering that to have been done which should have been done, funds to the amount of the savings deposit should be held segregated for the benefit of the estate; and that since the savings deposits were admittedly at all times in excess of $19,000, this amount should be held to have been traced into the hands of the receiver of the bank. A decree was accordingly entered establishing the trust as against the receiver, and directing him from the assets in his hands to pay to the executor the full amount of the $19,000 savings deposit. From this decree the receiver has appealed.

Assuming, without deciding, that the court below was right in holding that it was the duty of the bank upon its qualification as executor to segregate from its assets funds equivalent to the amount of the savings deposit of the executors and to hold same as a trust fund for investment, and that the 90 days' rule upon which it relies would have no application under the circumstances, we are nevertheless of opinion that plaintiff has failed to make out a case which would justify the court in subjecting assets in the hands of the receiver to a trust in favor of the executor for two reasons: (1) He has failed to show that the bank received in trust an "identifiable res" with respect to which a trust could be declared; and (2) he has failed to trace into the hands of the receiver any fund subject to a trust, or to show that any of the assets in the hands of the

receiver have been to any extent augmented as the result of a conversion of any such trust fund by the bank.

 The plaintiff showed, of course, that the bank had assumed a fiduciary relationship towards the assets of the estate when it qualified as coexecutor; but the asset represented by the savings deposit was a mere indebtedness on the part of the bank to the executors of the estate. The bank, occupying the position of a debtor on account of the deposit, no more became chargeable as a trustee with respect to specific funds on that account because of qualifying as executor than an individual who had executed a note to a decedent would be chargeable as trustee with respect to his individual property because of qualifying as executor under the will of such decedent. In the case supposed, the executor would hold his own note in his fiduciary capacity as executor with the duties of payment and collection which would flow from such relationship; but, until payment had been made, it could not be said that his individual property with which he might have made payment was held by him in trust as executor. And so here the bank as coexecutor held its own obligation evidenced by the savings account created by its predecessors; but it was not chargeable as trustee with respect to any of its assets which it might have applied to discharging its liability under the account until it actually made such application. See Scutter v. Stevens (D. C.) 4 F. Supp. 877. The distinction between the liability of a bank upon a general deposit of trust funds and its liability as trustee for funds held by it in a fiduciary capacity was drawn by this court in Santee Timber Corporation v. Elliott, 70 F.(2d) 179, 181, where we said:

"A general deposit in a bank creates merely a debt on the part of the bank. The funds thus deposited become the property of the bank; and it is under no obligation to the depositor to preserve them, to invest them, or to keep them separate from its other funds. Funds which are the subject of a trust may be thus deposited in a bank under a general deposit; and the obligation of the bank to repay the deposit may thus become the subject of the trust just as a bond, promissory note, or other obligation. But it is well settled that the bank does not become charged with the duties of a trustee merely because it accepts on deposit funds which are subject to a trust. 3 R. C. L. 518; 7 C. J. 633; notes in 37 A. L. R. 120 and 53 A. L. R. 564. It becomes charged with such duties when it accepts funds, not as a general deposit creating the relationship of debtor and creditor, but under an agreement to handle and account for them in a fiduciary capacity, as in Strauss v. U. S. F. & G. Co. (C. C. A. 4th) 63 F.(2d) 174, or under circumstances giving rise to a constructive trust, as in Tucker v. Newcomb (C. C. A. 4th) 67 F.(2d) 177."

The statute upon which the judge below based his decision, 12 USCA § 248 (k), requires that national banks acting in a fiduciary capacity segregate all assets held in such capacity from the general assets of the bank, and provides that funds deposited or held in trust awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business, unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board, upon which the owners of the fund shall have a lien in the event of the failure of the bank. As the funds deposited in the savings account did not come into the possession of the bank when it qualified as coexecutor, but merely the indebtedness evidenced by the deposit account, a question may well arise as to whether this statute has application to the situation here presented; but, assuming that it became the duty of the bank under the statute, upon qualifying as coexecutor, to segregate from its general assets funds to the amount of the deposit and hold same in trust for the estate, or to set aside in its trust department bonds or other securities to secure the deposit, the fact remains that it did neither of these things; and consequently there was never any fund or other identifiable property in the possession of the bank which the court could hold to have been subjected to the trust which the bank assumed as executor.

██ Trusts are not declared in vacuo because of a trust relationship. They must be predicated of particular property. Blakey v. Brinson, 286 U. S. 254, 263, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Texas & Pac. R. Co. v. Pottorff, 291 U. S. 245, 261, 54 S. Ct. 416, 78 L. Ed. 777; Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84, 87; Gulley v. Wisdom (C. C. A. 5th) 69 F.(2d) 495. And the record before us shows no property as to which a trust could have been predicated. The failure of the bank to segregate funds or set aside securities may have been a breach of legal duty on its part, but it certainly resulted in no identifiable res which could be declared the subject of a trust. As was well said by Judge Sibley in

920

Wisdom v. Keen (C. C. A. 5th) 69 F.(2d) 349, 350:

"Equity if dealing with the bank alone might well consider that it had done what it should have done and might well hold it to the consequences. American National Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310. But in dealing with the distribution of the assets of an insolvent national bank and with the requirement of ratable dividends to all claimants a more stringent adherence to what was actually done is proper. Here the bank agreed to segregate a trust res but never did it. By their mutual intent the bank's relation to Keen was that of a trustee rather than a debtor, but there is still no identifiable trust res traceable as such, but only a liability for a breach of trust in failing to create the res."

█ As plaintiff has failed to show that the bank received in trust an identifiable res with respect to which a trust could be declared, it necessarily follows that it has failed to trace any such trust fund into the hands of the receiver, or to show any augmentation of assets in his hands resulting from the conversion by the bank of such trust fund. This is fatal to the establishment of a trust against the assets in the hands of the receiver. Santee Timber Corporation v. Elliott (C. C. A. 4th) 70 F.(2d) 179, 183; Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84, 88; Lifsey, Receiver of Planters & Merchants First Nat. Bank of South Boston, Va. v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82; Harmer v. Rendleman (C. C. A. 4th) 64 F.(2d) 422, 423. In the case last cited, after adverting to the liberalization of the rule of tracing trust funds by Knatchbull v. Hallett, 13 Ch. Div. 696, and Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693, we laid down, with citation of controlling authority, the limitation upon the rule which is applicable here, as follows:

"But there is a limitation upon this modern rule as well settled as the rule itself, viz., that it is not sufficient to prove merely that the trust property has gone into the general estate and has presumably increased its amount and value. It is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. When it is sought to impress funds in the hands of a receiver with a trust on account of the wrongful conversion of trust property by an individual or corporation to whose rights he has succeeded, it must be shown that the funds in his hands have been directly augmented by the presence of the trust property or its proceeds, so that a court of equity can see with certainty that the trust property is in his hands. Peters v. Bain, 133 U. S. 670, 693, 694, 10 S. Ct. 354, 33 L. Ed. 696; First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585; Marshburn v. Williams (D. C.) 15 F.(2d) 589; Smith Reduction Corporation v. Williams (D. C.) 15 F.(2d) 874; Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 818, 819, 82 A. L. R. 1; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993; Frelinghuysen v. Nugent (C. C.) 36 F. 229, 239; City Bank of Hopkinsville v. Blackmore (C. C. A. 6th) 75 F. 771; Richardson v. New Orleans Debenture Redemption Co. (C. C. A. 5th) 102 F. 780, 52 L. R. A. 67; American Can Co. v. Williams (C. C. A. 2d) 178 F. 420; Empire State Surety Co. v. Carroll County (C. C. A. 8th) 194 F. 593, 604; Farmers' Nat. Bank v. Pribble (C. C. A. 8th) 15 F.(2d) 175, 176; Dudley v. Richards (C. C. A. 8th) 18 F.(2d) 876. And see exhaustive note in 82 A. L. R. 46, 52, 71, 73, and cases there cited."

The learned judge below was of opinion that there had been a sufficient tracing of the funds under the rule laid down in Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 82 A. L. R. 1, Brennan v. Tillinghast (C. C. A. 6th) 201 F. 609, 612, and Empire State Surety Co. v. Carroll County (C. C. A. 8th) 194 F. 593, 605, for the reason that it was admitted that the savings deposits of the bank at all times exceeded $19,000. But there can be no tracing of a trust fund where there was no trust fund in the first instance to trace. And, even if there had been such fund, the savings deposits of the bank, which were liabilities and not assets, would not assist in the tracing. Where a trust fund is shown to have been in existence and to have been converted by the bank, it may be segregated if it can be traced into an identifiable fund such as the cash of the bank; but here there could be nothing of that sort, as no trust fund was shown to exist. When the bank qualified as executor, it was indebted to the estate of Bryant for the funds which had been deposited with it; and there was no augmentation of its assets as a result of its qualification. At most there was a mere shifting of credits, which could not serve as the basis of a trust on the theory of augmentation. Santee Timber Corporation v. Elliott, supra; Swan v. Chil-

dren's Home Society of West Virginia, supra; Lifsey, Receiver of Planters & Merchants First Nat. Bank of South Boston, Va. v. Goodyear Tire & Rubber Co., supra; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993, 995.

For the reasons stated, the decree appealed from will be reversed.

Reversed.