**STEUBER et al. v. O'KEEFE.**

No. 4744.

District Court, D. New Jersey.

June 30, 1936.

Morris Gorson, of Atlantic City, N. J., for plaintiffs.

Bourgeois & Coulomb, of Atlantic City, N. J., for defendant.

AVIS, District Judge.

The plaintiff Margaretha Steuber, on December 19, 1921, entered into an agreement with Atlantic City National Bank (hereinafter called bank), the first paragraph thereof reading as follows: "The said party of the first part agrees to place with the said party of the second part the sum of Fifteen Thousand Dollars ($15,-000) cash and the said party of the second part hereby agrees to hold said sum of Fifteen Thousand Dollars and pay out an amount yearly equal to four per cent. (4%) thereon in the following manner."

The further provisions of the agreement, in brief, were that the bank should pay her an amount equal to 2 per cent. of the principal on hand of said sum of $15,000 on the 1st day of July, 1922, and a like amount on the 1st days of January and July in each year thereafter during her life time; that after her death the

same amount of 2 per cent. of the principal on hand to be paid on the same dates to her daughter Elizabeth Heinle during her life; that after the death of said Elizabeth Heinle, or, in case she predeceased the said Margaretha Steuber, then after the latter's death, the same amount to be paid the children of Elizabeth Heinle, living at the time of her death, in equal shares, until the youngest of said children reached the age of 21 years, and at such time to divide the principal sum among said children in equal shares; the issue of such children to receive parent's share in case of decease of parent before distribution. The agreement further provided that, if all children of Elizabeth Heinle, or their issue, were deceased at time for distribution, the principal sum to be paid Charles J. Heinle, her husband, or, if he be dead, to August Steuber, and, if he be dead, to St. Christopher's Hospital for Children, Philadelphia, Pa.

The money deposited in accordance with this agreement was obtained by a check of Margaretha Steuber for $15,043.41, dated December 7, 1921, drawn on the Ninth Title & Trust Company of Philadelphia, and, according to the stipulation as to facts, was collected by the bank on December 13, 1921, and deposited in an account known as the sundry deposit account. On January 11, 1922, the full amount was transferred to a new checking account in the commercial department of the bank in the name of Margaretha Steuber, and the $43.41 was paid to her by draft dated January 12, 1922, leaving the net amount of $15,000 in the account. On this amount interest was paid to the depositor at the rate of 4 per cent. per annum up to January 1, 1933.

Another agreement was made on December 31, 1928, between the same parties, which, for the purposes of this action, may be considered a duplicate of the original agreement, although the beneficiaries, after the death of Margaretha Steuber, are named in a somewhat different order. The amount involved under this agreement was $10,000, and was deposited in a general checking account on January 11, 1929, in the name of Margaretha Steuber. At the time of the execution of the agreement, the money was on deposit in the bank to the credit of said Margaretha Steuber in a time account, and the effect of the bank's action was to transfer the credit from one account to another.

The money received by the bank was not segregated or separately invested, but became a part of the general funds of the bank.

On January 30, 1933, the bank was declared insolvent, closed, taken over by the Comptroller of the Currency, and a receiver appointed.

The bill of complaint, filed in behalf of Margaretha Steuber and all the parties named as beneficiaries in the agreements, prays that the agreements may be construed and decreed to be trust agreements; that the bank be removed as trustee and a new trustee appointed; that the receiver turn over the fund to a new trustee, and for such other relief as may be equitable and just.

To succeed on their complaint, the plaintiffs must show: (1) That there was a trust; (2) that the assets coming into the hands of the receiver were augmented by the moneys deposited; and (3) that the particular funds are traced into the possession of the receiver.

It is apparent that neither of the parties deemed it necessary or desirable that the agreements should definitely declare the moneys as being deposited in trust. The first provides for the payment of interest "of the principal on hand of said sum of Fifteen Thousand Dollars." The same language is also in the agreement relating to the $10,000.

The question as to whether a trust was created by the instruments in suit is somewhat difficult of determination. Trusts, usually, are dependent upon the possession and use of the property or money involved for the benefit of the cestui que trust, and the segregation of the property or funds for that purpose. In the instant case the money was turned over to the bank, upon an agreement to pay a fixed rate of interest, without any suggestion of trust, except the provisions of the agreement as to the payment of interest and distribution of principal.

It seems quite clear that no trust was created in the sense claimed by plaintiffs. The bank treated the funds as a deposit, which was not prohibited by any of the terms of the agreements. No provision of the agreements indicates that the funds were to be separately kept or separately invested.

The case of Swan v. Children's Home Soc. of West Virginia (C.C.A.4) 67 F.(2d)

84, seems to dispose of the question at issue in the instant case. In that case the will of one Meredith Prickett provided as follows: "(4) I want the remainder of all my money placed in The Peoples National Bank of Fairmont, Fairmont, West Va. and the interest on the same to be given to the Children Orphan Home at Charleston West Va. or any other place in West Virginia where said home may be located." 67 F.(2d) 84, at page 85.

The executor instituted a suit to secure a construction of the will, and it was decreed that the fund should be deposited in the aforesaid bank at interest and that the interest be paid as provided in the will. The bank paid the interest as directed, and subsequently became insolvent. The bill in that case was filed to have the receiver of the bank charged with a trust as to the deposit so made. The District Court held that it was a trust. The Circuit Court of Appeals reversed the decision and determined that no trust was created. An examination of the text of that decision, and the cases therein cited, is convincing that the agreements executed in the instant case do not create a trust extending to plaintiffs the right of priority to payment out of the fund in the hands of the receiver.

■ If, however, the court had determined that a trust relationship existed, still the plaintiffs would not be entitled to recover in this action, unless it should be established that the assets coming into the possession of the receiver were augmented, and the moneys could be directly traced into his hands.

The $15,000 item became a part of the funds of the bank in 1921; the $10,000 item in 1929; and the bank closed in 1933. There has been no proof of any augmentation, and none of the moneys was traced to the receiver.

The law on this subject is clearly stated in the case of Harmer v. Rendleman (C.C.A.4) 64 F.(2d) 422, 423, as follows:

"The old rule with regard to the tracing of trust funds wrongfully misapplied, or the proceeds of property wrongfully converted, was that the right ceased when the property was turned into money and mixed and confounded in the general mass of property of the same description. 2 Story Eq. Jurisprudence 1258, 1259; Philadelphia Nat. Bank v. Dowd (C.C.) 38 F. 172, 2 L.R.A. 480. The modern rule, however, is that where such property or its proceeds has gone to swell the aggregate in the possession of the fraudulent party, it may, under proper proceedings, be segregated in amount from such aggregate sum, and made the subject of a trust, in order to accomplish the ends of justice. Quin v. Earle (C.C.) 95 F. 728, 731; Central Nat. Bank v. Conn. Mut. Life Ins. Co., 104 U.S. 54, 26 L.Ed. 693; Knatchbull v. Hallett, 13 Ch.Div. 696; notes 32 Am.St.Rep. 129, L.R.A.1916C, 31.

"But there is a limitation upon this modern rule as well settled as the rule itself, viz., that it is not sufficient to prove merely that the trust property has gone into the general estate and has presumably increased its amount and value. It is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. When it is sought to impress funds in the hands of a receiver with a trust on account of the wrongful conversion of trust property by an individual or corporation to whose rights he has succeeded, it must be shown that the funds in his hands have been directly augmented by the presence of the trust property or its proceeds, so that a court of equity can see with certainty that the trust property is in his hands. Peters v. Bain, 133 U.S. 670, 693, 694, 10 S.Ct. 354, 33 L.Ed. 696; First National Bank of Ventura v. Williams (D.C.) 15 F.(2d) 585; Marshburn v. Williams (D.C.) 15 F.(2d) 589; Smith Reduction Corporation v. Williams (D.C.) 15 F.(2d) 874; Schumacher v. Harriett (C.C.A.4th) 52 F.(2d) 817, 818, 819, 82 A.L.R. 1; Ellerbe v. Studebaker Corporation of America (C.C.A.4th) 21 F. (2d) 993; Frelinghuysen v. Nugent (C.C.) 36 F. 229, 239; City Bank of Hopkinsville v. Blackmore (C.C.A.6th) 75 F. 771; Richardson v. New Orleans Debenture Redemption Co. (C.C.A.5th) 102 F. 780, 52 L.R.A. 67; American Can Co. v. Williams (C.C.A.2d) 178 F. 420; Empire State Surety Co. v. Carroll County (C.C.A.8th) 194 F. 593, 604; Farmers' Nat. Bank v. Pribble (C.C.A.8th) 15 F.(2d) 175, 176; Dudley v. Richards (C.C.A.8th) 18 F.(2d) 876. And see exhaustive note in 82 A.L.R. 46, 52, 71, 73, and cases there cited."

This principle is sustained in the following cases: Schuyler v. Littlefield, Trustee, 232 U.S. 707, 34 S.Ct. 466, 58 L. Ed. 806; Blakey, Receiver, v. Brinson, 266 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82

A.L.R. 1288; Lifsey v. Goodyear Tire & Rubber Co. (C.C.A.4) 67 F.(2d) 82; McNair v. Davis (C.C.A.5) 68 F.(2d) 935.

The case of Wisdom v. Keen (C.C.A. 5) 69 F.(2d) 349, demonstrates quite conclusively that, even if a trust is established, a priority will not be decreed unless there is augmentation of assets and tracing of funds. The court said on page 350 of 69 F.(2d):

"This, then, is a case in which the bank and its customer definitely agreed that $1,-200 in cash should be held by the bank in escrow, to be delivered (not paid) on a condition and checks were given to the bank on which it was to get the cash out of its own vault. The obligation was perfect to segregate and hold the cash. Equity if dealing with the bank alone might well consider that it had done what it should have done and might well hold it to the consequences. American National Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310. But in dealing with the distribution of the assets of an insolvent national bank and with the requirement of ratable dividends to all claimants a more stringent adherence to what was actually done is proper. Here the bank agreed to segregate a trust res but never did it. By their mutual intent the bank's relation to Keen was that of a trustee rather than a debtor, but there is still no identifiable trust res traceable as such, but only a liability for a breach of trust in failing to create the res. This liability, absent a statutory priority or lien, has no higher dignity than other general liabilities. As to every general creditor the bank has failed to do what it ought to have done and what it promised to do. The federal statutes put all such claimants on an equality. Even claims due the United States have no preference. Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537."

Plaintiff cites the case of Washington Loan & Banking Co. v. Fourth Nat. Bank of Macon (C.C.A.5) 38 F.(2d) 772, as authority for the principle that "it is not necessary to trace coin or currency belonging to claimant, but it is sufficient if credits can be traced into receiver's hands." An examination of that case shows that the moneys in question, at the time of insolvency, were in the hands of a correspondent bank, and came into the possession of the receiver after his appointment. The court held only that it was not necessary to identify the particular coin or currency, and with relation to this point said on page 774 of 38 F.(2d): "There is really no problem of tracing. Identifying coin or currency is impossible, for no coin or currency was probably ever handled in the transactions. Tracing credits under modern doctrine is sufficient. Richardson v. New Orleans Coffee Co. (C.C.A.) 102 F. 780, 52 L.R.A. 67. The Macon bank's general accounts with the Atlanta and Philadelphia banks were equivalent to separate vaults or drawers in which some of its funds were kept, and if funds of the Washington bank are shown to have gone into one of them and no withdrawal has since been made which must have taken these funds out, equity concludes that the fund which the Macon bank did not withdraw was that which it ought not to have used. If therefore any of the collections at the time of the failure still rightly belonged to the Washington bank, it is plain that the receiver got them, and must account for them. Monticello Hardware Co. v. Weston (C.C.A.) 28 F.(2d) [672] 673."

Syllabus 1 in the case of Mark v. Westlin (D.C.Minn.) 48 F.(2d) 609, is also cited as authority for the claimed principle that, "to establish preferred claim against insolvent national bank for misapplied funds, claimant must show bank's funds were actually augmented by transaction." This quoted clause alone does not properly express the decision of the court.

In the clause of the opinion immediately following the above text, the court said on page 610 of 48 F.(2d): "In Empire State Surety Co. v. Carroll County (C.C. A.) 194 F. 593, 604, it was said: 'It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust proprety or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver. * * *' See, also, State Bank of Winfield v. Alva Security Bank (C.C.A.) 232 F. 847; Farmers' Nat. Bank v. Pribble (C.C.A.) 15 F.(2d) 175; Larabee Flour Mills v. First Nat. Bank (C.C.A.) 13 F.(2d) 330; Mechanics & Metals Nat. Bank v. Buchanan (C.C.A.) 12 F.(2d) 891."

I find as facts:

(1) The proofs have not established the creation of a trust.

(2) If the trust has been established, the proofs do not show that the assets com-

ing into the possession of the receiver were augmented by the moneys received from plaintiff Margaretha Steuber.

(3) The funds so received by the bank have not been traced into a specific fund or any specific identified property.

Conclusions of law:

Under the law as herein stated, and the failure of proofs on the material points stated, the plaintiffs are not entitled to the prayed for relief.

The bill will be dismissed.