RIDDLE *v.* FIRST NAT. BANK OF BUTLER, PA., with notice to Campbell, Receiver of said Bank.

(*Circuit Court, W. D. Pennsylvania.* April 21, 1886.)

1. BANKS AND BANKING—NATIONAL BANKS—CERTIFICATES OF DEPOSIT—POST-NOTES.

Certificates of deposit in the ordinary form, issued by a national bank to depositors, and payable to order, are not post-notes, within the prohibition of section 5183, Rev. St.

2. SAME—CERTIFICATE NOT DUE TILL DEMAND.

A certificate of deposit, payable to the order of the depositor on the return of the certificate, is not due or suable until demand made and return of the certificate.

3. SAME—STATUTE OF LIMITATIONS—RECEIVER.

The statute of limitations is not set in motion against a certificate of deposit by the appointment of a receiver for the bank which issued it.[1]

4. SAME—ASSETS—TRUST FUND.

The assets of a national bank in the hands of a receiver constitute a trust fund, in behalf of all creditors having claims thereon valid and in full life when the receiver was appointed, which the statute of limitations does not touch or affect.

5. SAME—PENNSYLVANIA STATUTE.

The Pennsylvania act of April 25, 1850, which takes out of the operation of the statute of limitations suits against a corporation which may have suspended business, etc., applies to a suit brought against a national bank in the hands of a receiver.

6. SAME—COMPOSITION OF CLAIMS.

Under the findings of fact, *held*, that the certificates in suit were not extinguished or affected by a composition of certain claims entered into between the plaintiff and the receiver of the bank under the direction of the comptroller of the currency.

7. SAME—DIVIDENDS—INTEREST.

While the plaintiff will be entitled to a dividend only upon the basis of the debt, and interest as of the date when the bank suspended, in this suit against the bank interest should be computed to the date of judgment.

In pursuance of a written stipulation, this case was tried by the court without the intervention of a jury. The following facts are therefore found by the court.

(1) The First National Bank of Butler, Pennsylvania, (the defendant,) issued, on the several dates thereof, and to the respective payees therein named, for deposits of money by them made, certificates of deposit, of which the following are copies:

*A.*

"$64.60.   FIRST NATIONAL BANK OF BUTLER, PA., August 12, 1878.

"Mrs. Annie Riddle has deposited in this bank sixty-four 60-100 dollars, payable to her order on return of this certificate properly indorsed, 12 months after date, with interest at five per centum per annum. If not presented at maturity, it will be considered as a renewal for same term, at same rate."

"ALEX. MITCHELL, Cashier."

*B.*

"THE FIRST NATIONAL BANK OF BUTLER, PA., January 8, 1879.

"W. H. H. Riddle, Esq., has deposited in this bank five hundred dollars, payable to the order of himself on return of this certificate properly indorsed.

"$500.   ALEX. MITCHELL, Cashier."

[1]See note at end of case.

*C.*

"$1,258.36.    First National Bank Butler, Pa., February 19, 1878.

"Samuel L. Riddle, Esq., has deposited in this bank twelve hundred and fifty-eight and 36-100 dollars, payable to his order, on return of this certificate properly indorsed, six months after date, with interest at five per cent. per annum.   If not presented at maturity, it will be considered as a renewal for same term, at same rate.                 Alex. Mitchell, Cashier."

(*Indorsed:*                                  "November 30, 1878.
"R'd of Alex. Mitchell, cashier, forty-eight 40-100 dollars, int. in full on the within to this date.           Sam'l L. Riddle,
                                   "Per W. H. H. Riddle.)"

*D.*

"$318.23.    First National Bank of Butler, Pa., March 21, 1879.

"Samuel L. Riddle, Esq., has deposited in this bank three hundred and eighteen 23-100 dollars, payable to his order, on return of this certificate properly indorsed, 12 months after date, with interest at five per cent. per annum.   If not presented at maturity, it will be considered as a renewal for same term, at same rate.          .       Alex. Mitchell, Cashier."

(2) Mrs. Annie Riddle and W. H. H. Riddle duly indorsed their above certificates (designated as *A* and *B*) to the said Samuel L. Riddle, the plaintiff.

(3) For infractions of the laws governing national banking associations a receiver of said bank was appointed by the comptroller of the currency in the month of July, 1879, and the bank has since remained in the hands of such receiver, in the course of liquidation.

(4) To No. 9, May term, 1880, of this court, the receiver brought a suit in equity against the said Samuel L. Riddle to recover back certain payments made by the bank to him on account of indebtedness (other than that involved in this suit) from the bank to him; it being alleged that such payments were made after an act of insolvency on the part of the bank, and in contemplation thereof, and with a view of giving him an unlawful preference over other creditors, contrary to section 5242, Rev. St.

(5) To No. 10, November term, 1881, of this court, the receiver brought a suit in equity against W. H. H. Riddle, and others, directors of said bank, to charge them for alleged violations of the national banking laws, and particularly with infractions of sections 5199, 5200, 5204, Rev. St.

(6) On January 31, 1885, the following proposition of compromise, signed by the parties therein named, was submitted by them to the receiver of the bank, viz:

"Butler, Penna., January 31, 1885.

"*Genl. John N. Purviance, Receiver of the First National Bank of Butler, Penna.*—Sir: It is hereby proposed on behalf of Charles Duffy, Charles McCandless, W. H. H. Riddle, Louis Stein, Thomas Stehley, Sr., Samuel L. Riddle, Thomas Robinson, and John M. Greer to settle and compromise in full all claims of the First National Bank of Butler against each and all of the above-named parties upon the following basis, viz.:   The said Duffy *et al.*, within five days from the date of receipt by the receiver of said bank of notification from the comptroller of the currency of approval of this proposition, to pay in cash to the receiver of said bank the sum of twelve thousand ($12,-000) dollars; and the said receiver shall thereupon discontinue and mark settled the two equity suits now pending in the United States circuit court for the Western district of Penna., one against the bank directors and the other against Samuel L. Riddle, and the suit against Charles Duffy in the U. S. court, the receiver paying out of the fund of twelve thousand dollars aforesaid all costs of said suits taxable as costs on the records thereof; and shall

further cancel and annul, as against Charles McCandless, all and every form of indebtedness held by the bank against said McCandless; the bank, however, retaining all securities by him transferred to the bank, and his deposit therein at the time of the failure; and shall, further, either cancel and annul all the claims, and the securities held therefor, of the bank against Thomas Robinson and John M. Greer, respectively, or shall assign and transfer the said claims and securities to such person as the said Robinson and Greer may request and direct."

This proposition was approved by the receiver, and on March 6, 1885, he was authorized by the comptroller of the currency to accept the same; the settlement to be made under an order of the court, pursuant to section 5234, Rev. St. On March 10, 1885, by an order of this court, made at No. 20, May term, 1885, the proposed settlement was approved and confirmed, and it was accordingly carried into full effect.

(7) By reason of a suggestion made by the receiver, (Gen. Purviance,) soon after his appointment, to the plaintiff or his agent, that pending the above-mentioned equity suits the plaintiff should withhold proof of his said certificates, they were not proved against the assets of the bank in the hands of the receiver. The liability of the bank thereon, however, was never questioned by the receiver; and when the above proposition of compromise was presented to and accepted by him it was agreed between him and the plaintiff that he, the receiver, (Gen. Purviance,) in receipting for the $12,000 would accept the certificates here in suit as the equivalent of $1,600, that sum being the estimated dividend to which they would be entitled; and accordingly, upon that basis, they were actually taken by the receiver, and transmitted by him to the comptroller of the currency. But the comptroller refused to receive them, and insisted that the whole $12,000 be paid in cash. The certificates were then redelivered by the receiver to the plaintiff's agent, who paid to the receiver the $1,600 in cash. The plaintiff subsequently offered to prove his certificates, but by order of the comptroller such proof was declined. Thereupon, on February 26, 1886, this action was brought thereon.

(8) When the receiver was appointed, W. H. H. Riddle was indebted to the bank upon the following notes, which passed into the receiver's hands, and have since been held by him, viz.: His note for $320, dated March 21, 1879, payable in four months after date, to the order of A. Mitchell; his note for $19.50, dated July 3, 1879, payable 30 days after date, to the order of Riter & Ralston; and the note of L. R. McAboy, for $225, dated March 22, 1878, and payable in four months after date, with the written guaranty and indorsement of W. H. H. Riddle thereon.

*W. S. Purviance,* for plaintiff.
*T. C. Campbell,* for defendant.

ACHESON, J. 1. That the instruments sued on are post-notes, within the prohibition of section 5183, Rev. St., is a proposition to which I cannot assent. They are mere certificates of deposit, of the usual form, issued in the ordinary course of banking business, and are not designed or adapted to circulate as money.

2. A certificate of deposit, payable to the order of the depositor on return of the certificate, is not due or suable until demand made and return of the certificate. *McGough* v. *Jamison,* 107 Pa. St. 336; Daniel, Neg. Inst. § 1707*a.* Hence it is plain that the statute of limitations had not commenced to run against any of the certificates in suit at the time of the appointment of the receiver of the defendant

bank. It is, however, contended that immediately thereupon these certificates became payable, and the statute of limitations was set in motion against them. But upon what principle the appointment of a receiver should have that effect is not clear to me. By virtue of such appointment, indeed, all the assets of the bank pass to the receiver, but, in his hands, in behalf of all creditors having claims thereon then valid and in full life, these assets constitute a trust fund which the statute of limitations does not touch or affect, (*Heckert's Appeal*, 24 Pa. St. 482;)' and then the bank itself is not dissolved by such appointment, but it remains answerable to creditors, and liable to suit as before, (*Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383.) But, without further discussion of the point, it is sufficient to say that this suit is excluded from the operation of the statute of limitations by virtue of the Pennsylvania act of twenty-fifth April, 1850, which reads thus:

"The provisions of the act passed the twenty-seventh March, 1713, entitled 'An act for the limitation of actions,' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business, or made any transfer or assignment in trust for creditors, or who may have, at the time and after the accruing of the cause of action, in any manner ceased from or suspended the ordinary business for which said corporation was created." 2 Purd. 1067, pl. 24.

A corporation put in the hands of a receiver is clearly within the purview of this act.

3. The settlement recited in the sixth finding of fact did not, in terms, embrace or concern the certificates in suit; nor were these certificates in anywise involved in any of the suits mentioned in the proposition of compromise. They were independent claims, held by the plaintiff against the bank, the validity of which had never been called in question by the bank or its receiver. Now, of a certainty, it was not the intention, either of the plaintiff or of the receiver, that this settlement should impair the certificates, or prejudice the rights of the plaintiff therein. On the contrary, the express understanding between these two was that these certificates should be treated as of the money value of $1,600, and to that extent used as cash in the stipulated payment. That arrangement was fair enough; but not having been previously communicated by the receiver to the comptroller of the currency, that official was not bound to sanction it. No doubt his refusal to do so was proper. The written proposition, the acceptance of which he had authorized, called for cash, and he was entirely right in insisting upon a strict compliance with its terms. But when the full cash payment was made, and the certificates were returned to the plaintiff, the latter was reinvested with all his original rights under the same. If the comptroller had been acting under a misapprehension as to the scope of the proposed compromise, it was, perhaps, open to him, when his attention was called to these certificates, to withdraw his consent altogether, and, upon a timely appli-

cation to the court, a revocation of the order for the settlement might possibly have been obtained. But this course was not taken, and to the consummated settlement such effect must be given as is consistent with fair dealing. Now, by no just interpretation of the terms of the settlement can it be held to have extinguished or affected these certificates. Under the evidence and findings, it is not to be doubted that they are valid and subsisting claims.

4. The settlement is expressed to be in full of all claims of the bank against W. H. H. Riddle. This would embrace his liability on the notes mentioned in the eighth finding, and such, undoubtedly, was the intention; so that, on this ground, the defense of set-off to certificate *B* fails, even if otherwise it could have prevailed as against the plaintiff.

5. While it is true that the plaintiff will be entitled to a dividend only upon the basis of the debt and interest as of the day when the business of the bank was suspended by order of the comptroller, (*White* v. *Knox*, 111 U. S. 784, S. C. 4 Sup. Ct. Rep. 686,) still the finding here must include interest to this date, (Id.)

Upon the facts found, I am of the opinion that the plaintiff is entitled to recover the amount of his claim; and, accordingly, the court finds in favor of the plaintiff the sum of $2,751.32. Let judgment for the plaintiff be entered upon the finding of the court.

### NOTE.

Where a receipt for money declares that the sum named therein is " due on demand," and is '' especially deposited," it is not a promissory note, but a certificate of deposit, and the statute of limitations will not begin to run until demand has been made. Smiley v. Fry, (N. Y.) 3 N. E. Rep. 186.

A right to sue a bank upon a general deposit does not accrue, nor the statute of limitations begin to run, until a demand of payment, unless the demand is in some way dispensed with. Branch v. Dawson, (Minn.) 23 N. W. Rep. 552.

*Semble*, the statute of limitations begins to run from the date of a certificate of deposit payable on demand. Tripp v. Curtenius, 36 Mich. 494.