**ATLANTIC GYPSUM CO. v. FEDERAL NAT. BANK OF BOSTON et al.**

No. 2972.

Circuit Court of Appeals, First Circuit.

March 9, 1935.

Lawrence S. Apsey, of Boston, Mass. (Channing, Corneau & Frothingham, of Boston, Mass., on the brief), for appellant.

William Macy Marvel, of Boston, Mass. (John C. Coughlin, Haven Parker, and Parkman, Robbins, Coughlin & Hannan, all of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

The question is whether the plaintiff has a preferred claim in the amount of $5,000 against the assets of the Federal National Bank which failed and is being liquidated by the defendant Pearson as receiver. There is no controversy about the facts.

The claimant made a contract with the Sunrayed Limeshell Products Company, under which the claimant agreed to process shells to be delivered to it by the limeshell company. Preparatory expenses for the purchase of machinery were required of the gypsum company by the contract; and it desired security that it should be repaid. The contract therefore provided that the limeshell company should deposit in escrow with the Federal National Bank the sum of $5,000 and instruct said bank to pay the gypsum company upon the termination of

the contract the cost and installation expense of all such machinery. Pursuant to this agreement the limeshell company drew its check for $5,000 on the Federal National Bank payable to that bank and handed it to Weber, the assistant cashier, to make the deposit called for. Weber was fully informed as to the contract and the purpose of the deposit; he advised the representative of the limeshell company by whom the matter was arranged that the best way to carry out the provisions of the contract was for the limeshell company to take a certificate of deposit from the bank, indorse it in blank, and return it so indorsed to the bank to be held as the deposit under the contract. This was accordingly done, both parties acting in entire good faith, with no thought that the bank might fail. The gypsum company was not consulted and did not know exactly what had been done until after the bank failed. Weber wrote to it at the time (August 2, 1929): "This will advise you that we are holding at this bank the sum of Five Thousand ($5,000.00) Dollars, delivered to us by the Sun-Rayed Lime Shell Products Co., with instructions that this sum is to be placed in escrow for the term of an agreement entered into by yourselves and the Sun-Rayed Lime Shell Products Co. Release of these funds must be requested in writing over the signatures 'of properly authorized officers of the two companies.' We will appreciate acknowledgment from you of this communication, advising if the arrangement is to your entire satisfaction." The gypsum company replied that the arrangement as stated in Weber's letter was "in accordance with our understanding with them," i. e., with the limeshell company. A copy of the contract was later furnished to the bank, and at its failure in December, 1931, was found with the indorsed certificate of deposit in its vaults. The certificate was dated August 2, 1929; it was in customary form, and interest on it had been credited at varying rates while it was outstanding. The gypsum company did not know about the certificate of deposit until after the failure. No question is made but that as between the gypsum company and the limeshell company the claimant is entitled to the deposit, nor is there any objection by the receiver to the allowance of an unpreferred claim therefor.

The only question is, as we have stated, whether the claimant is entitled to a preference. Its contention is that the arrangement between the bank and the limeshell

company, when viewed in the light of the surrounding circumstances and of Weber's letter to the claimant above quoted, constituted the bank a trustee, not of the certificate of deposit, but of actual cash to the amount stated. The District Judge rejected the claimant's contention, and held that no trust relationship existed and that the claimant must prove as a general creditor. The claimant has appealed.

The claimant's case rests on Weber's letter. It is argued that the terms of the letter are explicit and amount to a declaration of trust. If it had been written by an individual or by a business organization other than a bank, it might well be regarded as having that effect. It does not follow, however, that its expressions have the same effect when used by a national bank. For such an institution to hold as ear-marked funds a deposit made with it for a commercial purpose would be a very unusual transaction. Deposits with national banks, evidenced by a certificate of deposit, are ordinarily made on the credit of the bank, and create only a debtor and creditor relation. No sound reason occurs to us why a deposit of this character should be regarded as standing on any higher footing. The contract itself to which Weber's letter refers recites that: "The Limeshell Co. has deposited in escrow with The Federal National Bank of Boston, Mass., the sum of five thousand (5,000) Dollars and instructed said Bank to pay the Gypsum Co. upon the termination of this agreement * * * the cost and installation expenses of all machinery," etc. If this had been the fact, the claim of the Atlantic Gypsum Company might be maintained as a preferred claim. Although Weber stated in his letter that the bank was holding $5,000 in escrow to be delivered, etc., the relations between it and the limeshell company were otherwise. The money was mingled with the funds of the bank, and the only thing the bank held in escrow was the certificate of deposit, which created only a debtor and creditor relation between the bank and whoever had title to the certificate, it being indorsed in blank.

Weber and the limeshell company acted, no doubt, in good faith, but a different relation in law was created from that intended by the Atlantic Gypsum Company and the limeshell company. The claimant seeks to hold the bank to a different arrangement from that which was actually made. The expression "placed in escrow" was used to describe the purpose for which the funds

were held rather than the legal character of the deposit. We do not doubt that the gypsum company understood that the lime-shell company had deposited $5,000 in the bank and that the bank held the deposit under the contract. As between the three parties, the claimant would be entitled to the funds, but as against creditors of the bank they are governed by the actual situation and not by what was intended by the parties to this bill.

The liquidation of national banks is controlled by statute; and the statute is distinctly unfriendly to the recognition of special interests or preferred claims. R. S. § 5236 (12 USCA § 194); Cook County Nat. Bank v. U. S., 107 U. S. 445, 450, 2 S. Ct. 561, 27 L. Ed. 537. Doubts should be resolved against them. Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; First National Bank v. Miami (C. C. A.) 69 F.(2d) 346, 349. Here there was no contract directly between the claimant and the bank, as their minds did not meet; and the claimant is endeavoring to assert against the bank, by what amounts to an estoppel, a state of facts basically different from that which Weber set up and to which the letter referred.

The decree appealed from is affirmed, with costs.