## BROWN v. BOTKIN.
### No. 2693.

District Court, W. D. Michigan, S. D.
Dec. 19, 1935.

**RAYMOND, District Judge.**

Plaintiff seeks to establish the existence of a special trust and thereby a preferred claim against funds in the hands of defendant as receiver of the City National Bank & Trust Company of Niles, Mich. (hereinafter referred to as the Niles bank). Defendant insists that the relationship was none other than the ordinary one of debtor and creditor. The amount involved at the time of institution of suit was approximately $12,000, but by subsequent stipulation of the parties, plaintiff, without prejudice to his right to assert the alleged trust relationship as to the remainder of his claim, was permitted to withdraw dividends equivalent to the amount of dividends previously paid general creditors.

The testimony as to the circumstances under which plaintiff's deposits were made is widely divergent. There is no dispute, however, concerning many of the important facts. The pleadings admit that two of the elements essential to the establishment of right to preference, namely, augmentation and tracing of funds, are present. The sole issue presented is whether the relationship created by deposits made by plaintiff was that of trustee and cestui que trust or merely that of debtor and creditor.

On September 14, 1932, plaintiff indorsed and delivered to the Niles bank an interest-bearing certificate of deposit,

issued by the St. Joseph Loan & Trust Company of South Bend, Ind., in the principal sum of $7,000 and the Niles bank thereupon delivered to plaintiff its receipt therefor which reads:

"Sept. 14, 1932

"Received of Stephen F. Brown Ctf of Deposit #22324—Amount 7000.00 with Int from 8-21-31 Dollars Dated 2-1-32 For Deposit and purchase of 7000 par U S 4th LL 4¼% Bnds

"City National Bank & Trust Company "By A. E. Zordel."

On the same date, the bank deposited the money as a part of its general funds and issued an interest-bearing certificate of deposit for the principal sum payable to its own order, as follows:

"The City National Bank and Trust Co. "Niles, Michigan Sept. 14, 1932. No. 5968.

"This certifies that Stephen F. Brown has deposited in this bank $7000 and 00 cts Dollars $7000.00. Payable to the order of City National Bank & Trust Co., Niles, Mich. in current funds on return of this certificate properly endorsed. Interest at the rate of three per cent per annum for all even months if left four months or longer. Interest to cease at one year unless renewed. This bank reserves the right to require thirty days written notice of withdrawal of this deposit.

"Not subject to check.

"A. E. Zordel, Cashier.

"For the Purchase of 7000.00 U S 4th LL 4¼% of 33 @ 100—"

This certificate was left in the possession of the bank. The bank also issued a separate certificate of deposit payable to plaintiff for the amount of accrued interest on the certificate. At the same time plaintiff signed and delivered to the bank a written order for the purchase of United States Liberty Loan bonds in the amount of $7,000 when the open price thereof reached par. This order reads:

"City National Bank & Trust Co. "Niles, Michigan. No. 503

"Bond Department

"Niles, Michigan, Sept. 14, 1932

Please purchase and charge to my account Name Stephen F. Brown Address 621 N. Lafayette—So Bend The Following: 7000.00 U S 4th LL Bonds. 4¼% of 33-38 And guarantee payment thereof when purchased

When open Price 100 Amt. Paid

"S. F. Brown [Signed]."

On September 21, 1932, a similar transaction was discussed between plaintiff and the Niles bank with reference to an interest-bearing certificate of deposit in the principal sum of $4,940, also issued by the South Bend bank. On that date plaintiff executed another order for the purchase of United States Liberty Loan bonds in the additional amount of $5,000, which order read:

"City National Bank & Trust Co. "Niles, Michigan. No. 506

"Bond Department

"Niles, Michigan, Sept. 21, 1932

Please purchase and charge to my account Name Stephen F. Brown Address The Following 5000.00 par U S 4th Liberty Loan 4¼% of 33-38 And guarantee payment thereof when purchased When open Price 100 Amt. Paid $———

"[Signed] Stephen F. Brown"

On September 24, 1932, plaintiff indorsed and delivered to the Niles bank the certificate of deposit in the principal sum of $4,940, and the bank issued a receipt therefor as follows:

"September 24, 1932

"Received of Mr. Stephen F. Brown, Certificate of Deposit #11156, dated May 7, 1932, with interest from April 9, 1932, at the rate of 4% drawn on the Citizens Trust & Savings Bank, South Bend, Indiana, in the amount of $4,940.00. This certificate is to be held until October 9 at which time it is to be collected and deposited in a Certificate of Deposit with this bank with the understanding that we are to purchase $5,000 of Fourth Liberty Loan 4¼% bonds at par, if the market should go to that at any time.

"City National Bank & Trust Co. "By A. E. Zordel, Cashier."

On October 12, 1932, this second certificate of deposit having become payable and having been collected by the Niles bank, the amount of the principal was deposited by the bank in its general funds with a sufficient amount of the accrued interest thereon to equal $5,000, and its interest-bearing certificate of deposit for that sum was issued payable to its own order, the certificate reading as follows:

"The City National Bank and Trust Co.
"Niles, Michigan          Oct. 12 1932
"No. 6036

"This certifies that Stephen F. Brown has deposited in this bank $5000 and 00 cts Dollars, $5000.00 Payable to the order of City Nat'l Bank & Trust Co. in current funds on return of this certificate properly endorsed. Interest at the rate of three per cent per annum for all even months if left four months or longer. Interest to cease at one year unless renewed. This bank reserves the right to require thirty days written notice of withdrawal of this deposit.

"Not subject to check.

"Lillian Wohlrab, Cashier

"For the purchase of $5000 U. S. Gov't Bonds at $100"

This certificate likewise remained in the possession of the bank. The interest in excess of a sufficient amount to secure $5,000 was evidenced by a certificate of deposit payable to plaintiff.

No claim of preference is made growing out of the two small certificates of deposit for accrued interest.

At the time of the delivery of the certificates of deposit to the Niles bank, the market price of the Liberty Loan bonds ordered was about 104, and it remained considerably in excess of par until after the time when the bank was closed under the proclamation of the Governor of Michigan on February 13, 1933. On March 25, 1933, a conservator was appointed to take charge of the affairs of the bank and he was succeeded on September 18th of that year by the defendant as receiver.

Plaintiff is a resident of South Bend, Ind., and is aged seventy-one years. For many years he has been a tool maker. Until the transaction of September 14, 1932, he had no acquaintance with the Niles bank or any of its officials. He went there to transact business as the result of a suggestion made by the president of the First National Bank of Mishawaka, Ind., through whom he had attempted to buy Liberty bonds and from whom he received the information that because of many orders for such bonds then on file, he would not be able to obtain them there, and that he better go to some small town.

The differences between the parties arise from plaintiff's claim that on September 14, 1932, at about 2 o'clock in the afternoon and following a few minutes of general conversation with Mr. Zordel, the cashier, he talked with Mr. Brandon, the president of the Niles bank and discussed with him the deposit; that he told Brandon that he did not want to deposit the money; that he was afraid of banks; that he did not want any certificate of deposit or passbook; that he wanted to leave it in trust to purchase bonds immediately when they came down to par or thereabouts; that Brandon told him that the deposit would draw interest until the bonds were purchased, but that he refused interest, stating that he did not want it—that it was left in trust and would not draw interest; that Brandon then told him that the money would be set aside as a trust and called Mr. Zordel, the cashier, and instructed him to give plaintiff a receipt, telling him that the money was not to be mixed with the bank's money, but was to be left in trust in the bank to buy 4¼ Liberty Loan bonds when they came down to par; and that Zordel later handed him the receipt dated September 14th. Plaintiff insists that he transacted no business on that day with Mr. Zordel excepting as above stated. He also says that he did not read the receipt when it was given to him and was not aware of its contents until after the bank closed in February, 1933, when his attorney pointed out to him that it was "not made out right." Plaintiff also claims that the transactions of September 21st and September 24th were, so far as relates to the nature of the deposit and in all material respects, substantially the same as those of September 14th, and, of course, that the legal result is the same, and that the arrangement with Mr. Brandon was in substance that the money was to be handled exactly as it was in the first transaction.

The two South Bend certificates of deposit were collected in regular course through the Federal Reserve Bank in Chicago and the proceeds when collected were, in fact, commingled with the general funds of the Niles bank.

On the other hand, defendant claims that the first transaction was fully completed between plaintiff and Mr. Zordel, the cashier of the Niles bank; that plaintiff arrived at the bank shortly after 12 o'clock, at a time when Mr. Brandon was out for lunch; that plaintiff stated that he wanted the certificate of deposit of the South Bend bank collected and the money deposited in a certificate with the Niles

bank until Liberty Loan bonds could be purchased at par when he wanted to obtain $7,000 worth of Fourth Liberty Loan bonds at par; that a question arose as to when the bonds would go down to par and that plaintiff asked if he would get interest on the deposit in case the bonds were not purchased for some time; that the cashier informed plaintiff that interest would be paid if the deposit was left for four months and that if the bonds were purchased prior to that time he would receive no interest, but if held for a longer period he would receive interest; that plaintiff said that was all right; that an order blank was made out for the bonds; that Zordel made out a receipt to Mr. Brown for the certificate of deposit and gave it to him; that he then asked plaintiff if he would like to meet Mr. Brandon, the president, and that plaintiff returned to the bank later in the afternoon when he was introduced to Brandon. Zordel denies that either plaintiff or Brandon told him that the $7,000 was to be held as a separate trust fund and was not to be deposited with the other funds of the bank.

If the testimony of plaintiff and his corroborating witnesses is accepted as true, he is entitled to recover. Recovery, however, must be denied if the testimony of the cashier of the bank prevails.

The principles applicable to this class of cases have been clearly enunciated in recent cases. Blakey v. Brinson, 286 U. S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Keyes v. Paducah & I. R. Co., 61 F.(2d) 611, 86 A.L.R. 203 (C.C. A.6); Richards v. Fulton, 75 F.(2d) 853 (C.C.A.6); Kershaw v. Kimble (C.C.A.) 65 F.(2d) 553; Brownell v. Turman (C. C.A.) 75 F.(2d) 913; Great Atlantic & Pacific Tea Co. v. Citizens' National Bank (D.C.) 2 F.Supp. 29; Reichert v. American State Savings Bank, 264 Mich. 366, 249 N.W. 876, 89 A.L.R. 1284; Borgess Hospital v. Union Industrial Trust & Savings Bank, 265 Mich. 156, 251 N.W. 363.

■ The conclusion reached from examination of these cases is that the relationship created by a deposit in a national bank is that of debtor and creditor unless it is clearly stipulated that the money is to be set apart as a quasi trust fund for a special purpose and held as such for the account of the depositor and not mingled with other moneys of the bank. The circumstances must negative an intent that title to the money passes to the bank.

In the case of Richards v. Fulton (C. C.A.) 75 F.(2d) 853, at page 854, supra, Judge Moorman said:

"The appellant contends that by the court order of that date it was converted into a special deposit. Such a deposit, as has been frequently held, 'consists in the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title.' Keyes v. Paducah & I. R. Co., 61 F.(2d) 611, 612, 86 A.L.R. 203 (C.C.A.6). It contemplates a preservation of identity by segregation from other like kinds of money or property, and the bank becomes a bailee and not a debtor, as where the deposit is general and the bank takes title and becomes obligated not to return the specific money deposited, but to pay the depositor an equal sum on demand."

■ The controlling question in this case, therefore, is whether plaintiff has sustained the burden of proof resting upon him to establish that the deposits in the Niles bank became trust funds. It is to be observed that with the very large number of bank failures during the past three years, courts have more strictly scrutinized alleged special deposits or trust funds as bases for preferential recoveries. The fundamental policy of the National Banking Act is to secure equal ratable distribution among all creditors of an insolvent national bank. The degree of proof required is indicated by the following cases: Atlantic Gypsum Co. v. Federal National Bank of Boston (C.C.A.) 76 F.(2d) 59; Poole v. Elliott (C.C.A.) 76 F.(2d) 772; John L. Walker Co. v. Alden (D.C.) 6 F.Supp. 262; Colorado Milling & Elevator Co. v. Cunningham (D.C.) 7 F.Supp. 965; State Y. M. C. A. v. Picher (D.C.) 8 F.Supp. 412, 415. In these cases it is variously stated that such proof must be by "clear evidence" and that "all doubts are to be resolved in favor of the receiver, who is the trustee for general depositors." In the case of Atlantic Gypsum Co. v. Federal National Bank of Boston (C.C.A.) 76 F. (2d) 59, at page 61, supra, it was said:

"The liquidation of national banks is controlled by statute; and the statute is distinctly unfriendly to the recognition of special interests or preferred claims. R. S. § 5236 (12 U.S.C.A. § 194); Cook County Nat. Bank v. U. S., 107 U.S. 445, 450, 2 S.Ct. 561, 27 L.Ed. 537. Doubts

should be resolved against them. Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; First National` Bank v. Miami (C.C.A.) 69 F.(2d) 346, 349."

In the case of Poole v. Elliott (C.C.A.) 76 F.(2d) 772, at page 774, supra, the following comment was made:

"It is true that the acceptance of a deposit under such circumstances is a fraud on the depositor, for which he may rescind the contract and recover the deposit or ask that a constructive trust be declared in his favor upon its proceeds. St. Louis & S. F. R. Co. v. Johnston, 133 U.S. 566, 10 S. Ct. 390, 33 L.Ed. 683; Quin v. Earle (C. C.) 95 F. 728; Illinois Cent. R. Co. v. Rawlings (C.C.A.5th) 66 F.(2d) 146. But before such trust will be enforced against a receiver, who represents creditors as well as the bank, it is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund which has come into his hands, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. It is not sufficient to prove merely that it has gone into the general estate and has presumably increased its amount and value. Edisto Nat. Bank of Orangeburg v. Bryant (C. C.A.4th) 72 F.(2d) 917; Santee Timber Corporation v. Elliott (C.C.A.4th) 70 F. (2d) 179, 93 A.L.R. 874; Swan v. Children's Home Society of West Virginia (C. C.A.4th) 67 F.(2d) 84; Lifsey v. Goodyear Tire & Rubber Co. (C.C.A.4th) 67 F.(2d) 82; Harmer v. Rendleman (C.C.A. 4th) 64 F.(2d) 422."

And, in the case of John L. Walker Co. v. Alden (D.C.) 6 F.Supp. 262, at page 267, supra, Judge Lindley said:

"It is presumed that money received by banks is to be received in the ordinary sense and used by it in the ordinary banking sense, and until the court can see that certain facts stand out forcing a characterization of the transaction as a deposit of some character other than the ordinary character, it is not justified in giving any preference to a deposit."

In this connection it may be noted that in the case of Keyes v. Paducah & I. R. Co., supra, it was stated that the case of Davis v. McNair (C.C.A.) 48 F.(2d) 494 (relied upon by plaintiff) was indirectly overruled by Blakey v. Brinson, supra.

With the principles of the above-cited cases in mind, it is apparent that plaintiff's claim of preference cannot be sustained. Careful examination of the entire record is convincing that the verbal evidence concerning the transaction at the Niles bank and the conflicting versions thereof may be regarded as fairly balanced when considered in the light of the interest or prejudice of the respective witnesses immediately involved therewith, and the extent to which they are corroborated. The documentary evidence, however, which came into existence contemporaneously weighs strongly in favor of the defendant. Notwithstanding plaintiff's alleged repeated insistence that he desired that a trust fund be established and that no interest should be paid, the documents give no intimation of the creation of such a fund and no indication that the interest was not to be paid. The receipts delivered to plaintiff were sufficient to clearly convey to one of his apparent prudence, intelligence, and experience, the information that the arrangement he claims to have strenuously sought had not been carried into effect. His denial of knowledge of the contents of the receipts until after the closing of the bank is not convincing. It is incredible that one worried about the soundness of all banks, when dealing with a strange bank and bankers in the amount of $10,000, would fail to examine the only evidence which he received concerning the transactions. His repeated denials of his own signature (later conceded) upon the orders for purchase of bonds suggests a substantial degree of unreliability of memory concerning important elements of the transactions.

Moreover, after alleged repeated admonitions by plaintiff that a trust fund be created which should bear no interest, no sufficient reason is found in the record for failure on the part of the president of the bank, who was also the chief trust officer of the trust department, to heed those admonitions in contemporaneous transactions or to correct them when it came to his knowledge (as must have been the case during the several months prior to the date of closing) that the money had become a part of the general funds of the bank. He would in his official capacity be presumed to be reasonably familiar with the items carried in the trust funds of the trust department, and it is scarcely conceivable that an item of $10,000 in a com-

paratively small city bank would be overlooked or forgotten.

The conclusion of the court is that the documentary evidence, consisting of the two certificates of deposit, the two orders for purchase of bonds, and the two receipts, fairly represent the transactions which took place between plaintiff and the Niles bank, and that the reasonable deduction therefrom is that plaintiff deposited the certificates for collection through the usual channels with the intent that he should draw interest upon the proceeds thereof until Liberty bonds could be purchased at par, provided that was more than four months from the date of the deposit. It follows that plaintiff's claim is entitled only to the status of a general claim. A decree may be presented for signature denying the prayer of the bill of complaint.

The foregoing opinion is adopted by the court as its findings of fact and conclusions of law and is hereby made a part of the record.