FAIRCLOTH v. ATLANTIC CITY et al.
No. E–5335.

District Court, D. New Jersey.
Aug. 15, 1936.

Robert K. Bell, of Ocean City, N. J., for complainant.

Anthony J. Siracusa, of Atlantic City, N. J., for defendants.

AVIS, District Judge.

In the bill of complaint it is alleged that the Chelsea-Second National Bank & Trust Company of Atlantic City, N. J. (hereinafter called bank), was declared insolvent by the Comptroller of the Currency on January 27, 1933; that the complainant Charles A. Faircloth was duly appointed receiver of said insolvent bank, and since the aforesaid date the bank has not reopened and is in process of liquidation. The bill further alleges that while said bank was open for business, and in order to secure deposits of the public funds of the city of Atlantic City, a municipal corporation of the state of New Jersey, the bank turned over to the treasurer of said city certain bonds and securities, aggregating a par value of $50,-000, which bonds were by agreement placed in a safety deposit box in said bank in the name of the treasurer of said city, where they remained at the time of the filing of the bill of complaint in this cause; that at the time the bank closed and was declared insolvent, the city had on deposit in its various accounts in the bank the gross sum of $349,648.75.

It is further alleged in the bill of complaint that the pledge of said bonds and securities to so secure the deposits of the city was illegal and void, and that the bank had no power to make said pledge.

The prayers generally are (1) that the delivery and pledge of said bonds and securities be adjudicated and decreed to be illegal and ultra vires, and that complainant be placed in possession thereof by decree of this court; and (2) that injunction issue restraining the city and its treasurer from disposing of same.

The answer admits the appointment of complainant as receiver; admits that the receiver is engaged in the winding up of the affairs of the insolvent bank; admits the possession of the bonds and securities, but denies that they are owned by the bank; admits the amount of deposit of funds of city in the bank; denies that the pledge of the bonds and securities was illegal; claims that by reason of the overtures made by the bank the deposit was made by the city, and that the bank derived great profits from the use thereof; that the city has the right to retain the bonds and securities; that the complainant is in laches in bringing the action, and that by reason thereof the city's financial affairs have been adjusted in accordance with the belief that it would retain the bonds pledged; that

complainant is estopped to deny the validity of the agreement of pledge, and is bound by the agreement; that complainant is precluded from asserting the ultra vires nature of the contract, and that complainant comes into court with unclean hands. The answer sets up as a defense in addition that banking institutions in the state of New Jersey are authorized by law to give security for the safe keeping and prompt payment of money deposited by a municipal corporation, and that under the charter of the city of Atlantic City it was authorized to pass, and did pass, an ordinance providing for the pledge of bonds to secure deposits of the city's moneys.

Much of the answer presents defenses, and I desire to call counsel's attention to the fact that this is not proper pleading. The rules require that the answer should make reply only to the allegations of the bill and that such matters as are set up by way of defense should be specifically noted. However, for the purposes of the present motion, the court will consider the defenses as if properly pleaded.

Defendant also counterclaims a set-off of such portion of the deposit of the city in the bank as will equal the value of the bonds and securities pledged.

Complainant moves to strike the answer, defenses, and counterclaim on the ground that they are frivolous, and constitute no defense to the claim set forth in the bill of complaint.

It will be noted that the bank is insolvent, and is in process of winding up, and liquidating its assets for distribution amongst its creditors. With the exception of creditors who have legal liens or those for whom the bank is trustee, the act of Congress provides that the assets of an insolvent bank shall be divided ratably to all creditors. 12 U.S.C.A. § 194. In cases where trusts are established, and it appears that the assets have been augmented by the trust and the funds traced into the hands of the receiver, the courts have decreed priorities, and directed satisfaction of such trusts as a preference over common creditors. The Supreme Court has ruled, however, that this can only be done where all three of the necessary requisites have been clearly established. Trusts or priorities created by state laws will be disregarded in all cases where such laws interfere with the ratable distribution established by the United States laws.

The laws of Congress alone control the right of a national bank to pledge its securities or other assets as security for deposits. Prior to 1930 the law provided that a national bank might pledge its assets only for the securing of federal moneys. In that year an act was passed (Act June 25, 1930) in the following language: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." 12 U.S.C.A. § 90.

So far as I can find, this question was first directly litigated in the case of Baltimore & Ohio R. Co. et al. v. Smith et al. (C.C.A.) 56 F.(2d) 799 in this Circuit. I was a member of the court sitting in that case and the determination was that national banks were not permitted to make pledges for deposits unless expressly authorized so to do by an act of Congress. No act being in existence at the time of the pledge authorizing security for deposit of an individual or a corporation, it was ordered in that case that the bonds deposited in trust should be turned over to the receiver as a part of the assets of the bank, to be liquidated and distributed to creditors.

Shortly thereafter the Supreme Court decided the case of Texas & Pacific Railway Company v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and held without question that a pledge by national banks was not legal unless authorized by act of Congress. This decision completely disposes of all of the defenses raised in the instant suit except the insistence that the adoption of an ordinance by a municipal corporation is equivalent to authorization by a law of the state, as permitted in the Act of Congress of 1930, supra. The aforesaid Supreme Court case disposes of the defenses of ultra vires, laches, unclean hands, estoppel, and set-off, and establishes the principle that such securities so illegally pledged shall become a part of the assets of the insolvent bank for ratable distribution.

It is admitted that at the time the pledge was made, and at the time of the closing and insolvency of the bank, there was no law in the state of New Jersey authorizing the banking institutions of the state to make pledges to secure deposits of

the state or any political subdivision thereof, but defendant attempts to maintain the legality of the pledge by reason of a certain ordinance of the city of Atlantic City which directs the treasurer of said city and the custodian of school funds to deposit moneys in certain banking institutions, but only upon the deposit with the city financial officer of bonds to secure the deposit, on a ratio stated in the ordinance.

The existence of such an ordinance in no manner complies with the provisions of the act of Congress. The authority given Atlantic City by the Legislature to pass and adopt ordinances for the safekeeping of its property could not under any circumstances be held a compliance with the federal statute, which contemplates only a direct act of the Legislature to permit such pledges to be made. Congress did not contemplate that local governing bodies could by ordinance affect banking operations in a restricted district, but provided only that the practice might be operative where the Legislature had definitely and directly authorized the practice as to "banking institutions in the State." See Fidelity & Casualty Co. of New York v. Allen et al. (C. C.A. 7) 84 F.(2d) 53.

While it may work a hardship as to the municipality, to hold otherwise would deprive the creditors of the bank of a fund to which they are justly entitled.

The facts alleged in the answer, defenses, and counterclaim, if true, present no defense to the allegations of the bill of complaint, are frivolous, and will be stricken. A decree in accordance with the prayer of the bill should be entered.