### BRYANT v. LINN COUNTY, OR., et al.
### No. E–9449.

District Court, D. Oregon.
Oct. 24, 1938.

Oscar Hayter, of Dallas, Or., for plaintiff.

Mark V. Weatherford and J. K. Weatherford, Jr., both of Albany, Or., for all defendants except United States Nat. Bank of Portland.

JAMES ALGER FEE, District Judge.

This suit was brought by the Receiver of The First National Bank of Albany, Oregon, an insolvent institution to prevent the payment of the proceeds of bonds pledged by the Bank to secure deposits made therein by the officers of Linn County. Most of these deposits were in the form of checks drawn upon institutions outside of Albany. These instruments were forwarded to correspondent institutions and the credits thereby obtained were destroyed or seriously impaired by debit items before the closure of the Albany Bank on March 1, 1933. It is conceded that the pledge of certain of the bonds was invalid. The Receiver would, therefore, be entitled to this fund, except for the fact that it is claimed the deposits constituted a trust fund. In this connection, David B. Evans, Esq., the Special Master to whom the cause was referred, found that the Albany Bank had been insolvent for a year prior to the date of closure, to the knowledge of its managing officers. He further found that the deposits made by the officers of the County during that year were made on the faith of the solvency of the institution. The court approves this finding but on the basis of

the record further finds that the Albany Bank was hopelessly and irretrievably insolvent for many years prior to March 1, 1933, to the knowledge of its managing officers and that the deposits made not only by the officers of the County but all other persons during the entire period were upon the faith of the solvency of the Bank.

It is apparent, then, that the initial questions involved are first, whether a trust ex maleficio arose by virtue of the condition of the institution and the knowledge of the officers thereof, and second, as to whether there was a trust res which came into the hands of the Receiver.

These questions are intermingled, and solution depends upon whether federal law or state law should be applied. Schumacher v. Harriett, 4 Cir., 52 F.2d 817, 82 A.L.R. 1, is authority which would indicate that a trust res could be created by deposit of checks upon other banks even if the credits thereby obtained were wiped out by subsequent debit items charged to the forwarding Bank. The case above cited has been the basis of much controversy in the federal courts, and may have been overruled by Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 221-224, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248. See Koechling v. Pyne, 2 Cir., 88 F.2d 1012.

It is probable that the view adopted in Schumacher v. Harriett, supra, is that applied in most of the state courts. See Note, 82 A.L.R. 208 and ff. The Oregon Supreme Court, adopting the rule of the Schumacher case, held that where a check drawn on an outside bank was deposited, the effect was the same as if cash had been placed in the receiving bank and the fact that the check had been forwarded to another institution which collected and credited the bank originally receiving it, coupled with the fact that these credits had been dissipated by subsequent debits against that bank, would not prevent the tracing of the fund by the original depositor. School District v. Schramm, 142 Or. 296, 20 P.2d 241. Furthermore, the ultima thule was reached in the same decision by the creation of a trust ex maleficio as to the check based upon the fiction that where the officers of the bank knew of insolvency, it was the intention to use the money of the bank in paying off the debits rather than the credit obtained from the deposited check.[1]

---

[1] For a criticism of this extension, see People v. California Safe Deposit & Trust Co., 175 Cal. 756, 167 P. 388, L. R.A.1918A, 1151, and Poole v. Elliott, 4 Cir., 76 F.2d 772, 775. The differentia-

However, this decision related only to one check deposited two days before closure. School District v. Schramm, supra.

The Supreme Court of the United States in Erie Railroad Company v. Tompkins, 304 U.S. 64, 72, 73, 58 S.Ct. 817, 819, 82 L.Ed. 1188, 114 A.L.R. 1487, has said: "* * * in all matters except those in which some federal law is controlling, the federal courts exercising jurisdiction in diversity of citizenship cases would apply as their rules of decision the law of the state, unwritten as well as written." There may still be a question as to whether the court will apply equitable doctrines peculiar to a particular state or will be bound under the federal constitution to the interpretations of the substantive law of equity as applied by the High Court of Chancery in England in 1789 and ramifications thereof.

The creation of a trust, the existence of a res, and the tracing of a trust fund are, of course, dependent upon the substantive law developed by the Chancellors. However, for the purposes of this opinion it will be assumed that all commercial transactions of each state will be governed by the local law of that state.[2] It is doubtful that distinctions could be maintained between these branches of law especially as there has been a tendency to syncretize the substantive principles of law and equity in states where there has been but one system of procedure.

■ There is no real reason, except perhaps the constitutional one above suggested, why trust relations of a national bank should not be controlled by the law of the state wherein it is situated, any less than the title to the real estate which it holds or the construction of the terms of a negotiable instrument which a citizen of that state has executed to it. The interpretation of no federal law, treaty, or constitutional provision is involved in determinations as to whether money is held in trust by a bank.[3]

The vital distinction must be made between the interpretation of transactions of a national bank while in the normal transaction of its business and the relations which arise upon insolvency. The latter must be construed in the light of the federal statutes relating to liquidation. It is true, rights in existence can not be destroyed by the application of the statutory rule, but these may be modified by waiver or inaction, to serve the purpose of orderly distribution.

■ The final question in this case is then one of the distribution of the assets of an insolvent National Bank.[4] Liquidation of the assets of such a corporation and distribution thereof is accomplished under the authority of the federal constitution and the laws of Congress passed pursuant thereto.[5] In the past, on the one hand, federal courts in determining questions of the existence of a trust res were applying and interpreting doctrines of equity jurisprudence.[6] On the other hand, these courts, in dealing with problems of administration of the assets of an insolvent National Bank were construing the governing statutes of the United States. In the latter sphere, no state statute, or rule of law applied by a state court, is given weight.[7] Here, then, is a situation where a "federal law is controlling". Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 819, 82 L.Ed.

---

tion between the presumption that a bank pays its own money out instead of the money belonging to a trust and the presumption that a bank intended a credit balance in another institution to be preserved as a trust fund, when it actually exhausted the credit by debit items on its own account, is striking.

[2] See Willing v. Binenstock, 302 U.S. 272, 275, 58 S.Ct. 175, 82 L.Ed. 248.

[3] In Wisdom v. Keen, 5 Cir., 69 F.2d 349 there is an intimation to the contrary but there is no foundation for the idea that the existence of a trust depends on the construction of the federal statute. See, also, Walsh v. Deitrick, D.C., 22 F.Supp. 377.

[4] A trust of the assets is created upon insolvency, but it is, of course, subject to prior equities. In re United Grocery Co., D.C., 253 F. 267; See Riddle v. First National Bank, C.C., 27 F. 503.

[5] See Beard v. Independent District of Pella City, 8 Cir., 88 F. 375, 376.

[6] See Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 226, 55 S.Ct. 394, 399, 79 L.Ed. 869, 99 A.L.R. 1248.

[7] "The power of the nation within the field of its legitimate exercise overrides in case of conflict the power of the states." Jennings v. United States Fidelity & Guaranty Co., supra; People ex rel. Barrett v. Union Bank & Trust Co., 362 Ill. 164, 199 N.E. 272, 104 A.L.R. 1090; Faircloth v. Atlantic City, D.C., 16 F.Supp. 131, Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700.

1188, 114 A.L.R. 1487. The construction here given by federal courts to the federal enactment must still prevail, whether a trust is involved or not.

The distribution of the assets of an insolvent national bank is controlled by a law enacted by the Congress which requires a ratable division thereof.[8]

When the doors were closed, if the state law be followed, a trust ex maleficio was created not only in favor of the County of Linn, but in favor of every other person whose deposit was similarly accepted. In view of the history of its operation while insolvent for years before, the depositors of this bank must have been nearly all embraced in this class. The assets of the bank were then practically all held in trust. If distribution had been made upon theory of the existence of a trust ex maleficio, the depositors would have thus shared pro rata in the assets. Standard Oil Co. of New Jersey v. Elliott, 4 Cir., 80 F.2d 158. It will be noted that the results accomplished if a claim of trust ex maleficio upon the part of each depositor had been promptly asserted would have been exactly the same as are those now to be attained, if the receiver distribute all the assets in accordance with the mandate of the federal statute.

The pertinent facts relating to the raising of the claim of trust ex maleficio in behalf of the County of Linn should be reviewed. The Bank closed March 1, 1933. A receiver was appointed August 16, 1933. This suit was commenced June 13, 1934, but no suggestion was made as to a claim of trust ex maleficio. The cause was set for trial twice in this state of the pleadings, but was postponed. Finally, on January 27, 1935, the contention as to insolvency of the Bank to the knowledge of its officers was first incorporated in the amended answer presented on that date. The cause was referred to a master to whose report exceptions were filed. The defendants have some reasonable justification for part of the delay. But the salient factor is that, meanwhile, the assets of the Bank have been distributed, in a large proportion, to the depositors, and liquidation has steadily proceeded from the appointment of the receiver.

The other depositors, who were in a large measure at least, in the same position as Linn County, when the Bank closed its doors had waived any such claim by participation in the proceeds of distribution long before the date the amended answer was filed. Liquidation could not be held up pending litigation. If the claim of the County of Linn that it is entitled to payment in full because of the alleged trust be allowed, a grave injustice would be done other depositors who initially stood in the same position as the County.[9] The steps can not now be retraced. This situation, whatever were the causes of the delay, was brought about by the failure of the County to assert the claim of trust ex maleficio until almost twenty-three months after the closing of the Bank, seventeen months after the appointment of the receiver and, even more serious, six months after the filing of its first answer.

As a matter of orderly liquidation in accordance with the dictates of the statute, the federal courts have uniformly placed the burden upon the claimant of a trust fund.[10] With special particularity, these tribunals have required that claims for preferences based upon alleged trusts arising ex maleficio be promptly asserted.[11] It is true, these cases may be based upon the equitable doctrine of laches as at that time applied in federal courts. But as a construction of the statute in the light of orderly administration of assets, the conclusions reached may be justified. The requirement that a claim of trust be promptly asserted because it is in derogation of the mandate for ratable distribution was within the purview of the statute. The federal courts firmly established the doctrine that under this enactment immediate assertion of such a claim must be made or it will be lost.[12]

---

8 " * * * the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction * * *." 12 U. S.C.A. § 194.

9 Poole v. Elliott, 4 Cir., 76 F.2d 772, 774, 775; Standard Oil Co. of New Jersey v. Elliott, 4 Cir., 80 F.2d 158, 161, 162.

10 Converse Rubber Co. v. Boston-Continental National Bank, D.C., 12 F.Supp. 887; Brown v. Botkin, D.C., 13 F.Supp. 1000, 1003, 1004.

11 Walsh v. Deitrick, D.C., 22 F.Supp. 377.

12 Adams v. Champion, 294 U.S. 231, 238, 239, 55 S.Ct. 399, 79 L.Ed. 880.

■ The same result may be reached by the application of the equitable doctrine of laches.[13] Two considerations may be developed in this connection. The defense of laches was not pleaded. But at the time this suit was pending up to the final consideration by the court, the Equity Rules of the Supreme Court of the United States governed. Laches was not required to be affirmatively pleaded.

■ The confusion as to whether state or federal law might again arise but for the fact that the Oregon courts have administered equitable doctrines separately as have the federal courts. But the doctrine of laches with all its customary applications has been accepted[14] in Oregon. The failure to assert the claim while the rights of others thereunder were materially prejudiced destroyed the right to urge it now. Either on the ground of the construction of the federal statute or on the ground of equitable doctrine of laches which is part of the substantive law of the State of Oregon, the result is the same. To permit Linn County to have its deposit declared a trust at this date would be inequitable and not in accordance with the federal statute as to distribution. If it had been promptly asserted, Linn County would have still had to share with other depositors in the same situation. It should not be permitted to gain an advantage by its inaction.

The judgment is for plaintiff.

---

[13] See cases cited in note 9.

[14] State ex rel. Security Savings & Trust Co. v. School District No. 9 of Tillamook County, 148 Or. 273, 31 P. 2d 751, 36 P.2d 179; Holmes v. Graham, 159 Or. 466, 80 P.2d 870; Tanous v. Johnston, 113 Or. 343, 232 P. 793; Loomis v. Rosenthal, 34 Or. 585, 57 P.

55; Weiss v. Bethel, 8 Or. 522; Raymond v. Flavel, 27 Or. 219, 40 P. 158; Wilson v. Wilson, 41 Or. 459, 69 P. 923. It is true the Oregon courts hold the usual qualification that mere delay without prejudice to others is not sufficient. Mays v. Morrell, 65 Or. 558, 132 P. 714.